HENRY HILL *et al.*, Appellants, *v.* JAMES G. FIGLEY, Appellee.

APPEAL FROM HANCOCK.

All the personal property of the tax payer is bound for the payment of his taxes, from the time the collector receives his warrant until they shall have been paid. The warrant, like an execution, operates as a lien.

THIS was an action of trespass, brought by the appellee, who was plaintiff below, against the appellants, who were defendants below, to recover damages for two hundred cords of wood, of which the plaintiff claimed to be the owner.

Plea, not guilty.

Both parties claimed the wood under title derived from James F. Death & Sons.

A jury was dispensed with, and the case was submitted to SIBLEY, Judge, for trial.

The evidence and admissions showed on behalf of plaintiff below, that Edward D. Baldwin was collector of the town of Warsaw, county of Hancock, and State of Illinois, for the year 1858, and that the collector's book for the taxes of 1858, came into his hands about the first of December, 1858; that the amount of tax charged on said book against James F. Death & Sons was, on their personal property, $141.56, and on their real property, $92.45; that a warrant was attached to said book, commanding said Baldwin to collect and pay over said taxes; that by virtue of said warrant, said Baldwin levied upon the property in dispute, on the 22nd of April, 1859; that previous to the levy, he demanded the taxes of Death & Sons; that at the time it was so levied upon, it was the property of James F. Death & Sons; that it was advertised for sale by Baldwin according to law; that it was sold by him, and purchased by the plaintiff, Figley, on the fourth of May, 1859; that after the

sale to plaintiff, and before the commencement of this suit, defendants took and carried away about one hundred cords of said wood; that it was worth from $2 to $2.50 per cord; that Baldwin sold four hundred cords of said wood to the plaintiff, under said warrant, on the fourth of May, 1859, at fifty cents per cord; and that when the defendants purchased the wood at sheriff's sale, as hereinafter stated, they had notice of the claim of Baldwin, the collector, on said property, under said warrant.

On behalf of the defendants below, it was admitted by the plaintiff:

That at the March term, 1859, of the Hancock Circuit Court, a judgment was recovered by Hollowbush & Co. against Spencer & Co., of which firm of Spencer & Co., James F. Death & Sons were members; that on the 25th of March, 1859, an execution was issued upon said judgment, directed to the sheriff of Hancock county, Illinois; that said execution came to the hands of the sheriff on the 25th March, 1859, at nine o'clock, A. M., and that he levied it· on the property in controversy on the 12th April, 1859, and prior to the levy by the collector, Baldwin; that by virtue of said execution, the sheriff sold the property on the 30th April, 1859, and that the defendants below became the purchasers thereof at the sale, and claim to be the owners thereof, by virtue of said sale and purchase, and that, at the time the plaintiff purchased of Baldwin, the collector, he had notice of the prior sale by the sheriff to the defendants.

Defendants also proved that the personal property of James F. Death & Sons, listed for taxation for the year 1858, and upon which the before mentioned personal property tax was assessed, consisted of horses, mules, cattle, hogs, wagons and carriages, goods and merchandise, and manufactured and unmanufactured articles.

The court found the defendants guilty, and assessed the plaintiff's damages at $225, and rendered judgment therefor, with costs of suit, in favor of plaintiff and against defendants, and defendants excepted.

The appellants, who were defendants below, now assign for error the opinion and decision of the court finding the defendants guilty, and rendering judgment against them as above mentioned.

BROWNING & BUSHNELL, for Appellants.

WILLIAMS, GRIMSHAW & WILLIAMS, for Appellee.

WALKER, J. This record presents the question, as to what

property is bound by the lien created by the delivery of the warrant to the collector. The lien is created by the 53rd section of the revenue act, (Scates' Comp. 1099,) which is this : " The assessment shall be a lien on the personal property of all persons owing taxes (from and after the time the assessment books are received by the collector) for State and county tax, due thereon, and no sale or transfer of such property shall affect the claim of the State or county, but the said property may be seized by the collector, wherever found, and removed if necessary, and sold to discharge the taxes of the person owing the same at the time of such assessment."

Is the lien given, by this section, upon all the personal property owned by the tax-payer at the time of the delivery of the tax books to the collector, or is it confined to only such articles as entered into and formed a portion of the assessment ? This section does not in terms limit it to the property listed for taxation. But it is urged by the apellants that the language " due thereon" refers to, and qualifies property as its antecedent, and thereby limits the lien to the property assessed. The lien is given upon the property of the tax-payer, from the delivery of the collector's books to the officer. It is true that the statute declares that the assessment shall be a lien from and after the delivery of the books to the collector. A lien upon what ? Upon the personal property of persons owing taxes. Not upon the property assessed for taxation, but upon his personal property. The language is manifestly broad enough to embrace, and we think does embrace, all of the personal property which he owned at that time. We have no doubt that such was the intention of the Legislature in adopting this provision. The object the Legislature had in view was to secure the collection of the revenue, and if the construction were given, that the lien only extended to the specific articles assessed, the object would not be attained. The assessments are made in May and June, and the collector's books do not come to the hands of the officer before November, so that with traders and business men of the country, all, or the greater portion, of the property assessed by them, in the interim changes hands, and much of it is consumed. And with others, a large portion changes hands, is removed, or cannot be identified.

If the lien is to be confined to the property assessed, by the same rule of construction, we must hold that it attaches to each article of property to the extent only of the amount of tax assessed upon it. This would lead to great perplexity and confusion, as each specific article of property is not, nor does the law require it to be enumerated, with its value annexed. The amount of the tax on personal property is given in an aggregate

sum, on the collector's books, and it would be impossible to ascertain the precise amount for which the books were a lien on each article. The Legislature never could have designed to impose such difficulties in the collection of the revenue. The language " due thereon," we think was intended to apply, and does apply to the collector's books, and not to the assessment, or the property assessed. When they are delivered to the collector, all the taxes which he is commanded to collect, is due on them, from the payer to the State, county, etc. If a different lien had been intended, it seems to us that the lien would have been given from the time the assessment was made. We have no hesitation in believing that the Legislature intended to bind all the personal property in the hands of the tax-payer, from the time the collector receives his warrant until it is paid, precisely as an execution binds the property of the debtor on its delivery to the officer.

This construction does not create the hardship which was urged. All persons know that taxes are due on the 1st day of November in each year, and knowing that the collector's books become a lien on all the property owned by the tax-payer, from the time of their delivery until the taxes are discharged, and when any person is desirous of purchasing such property, he must see that the tax has been paid, or take the hazard of having it seized after his purchase, just as if he had purchased personal property subject to an execution lien. To inform himself before purchasing, he has only to call upon the collector, to learn whether it is discharged from the liens for the amount of taxes owing by the owner. This is certainly not more inconvenient than the liens created by executions in the hands of sheriffs and constables.

We are, therefore, of the opinion that the court below committed no error in the rendition of the judgment in this case, and that it must be affirmed.

*Judgment affirmed.*