HENRY HILL *et al.*, Appellants, *v.* JAMES G. FIGLEY, Appellee.

### APPEAL FROM HANCOCK.

The omission, in an assessment roll, of some word or character to designate what the figures, in the columns headed "valuation," were intended to represent, is one of the defects which are remedied by the 44th section of the revenue act of 1853.

A collector's warrant confers the same authority, and performs the same office as a *fi. fa.* execution, and when regular and fair on its face, protects the officer, and those acquiring rights under it, to the same extent as an execution.

THIS is an action of trespass, commenced by the appellee against the appellants in the Hancock Circuit Court, in which the declaration contains a single count, and alleges that the defendants, on the 21st day of May, A. D. 1859, and on divers other days between that day and the commencement of the suit, with force and arms took and carried away 500 cords of wood, the property of the plaintiff, of great value, etc., and converted the same to their own use, etc., and to the plaintiff's damage, $2,000.

The defendants pleaded the general issue, and a jury being waived, the cause was tried by the court, which assessed the plaintiff's damages at $514; whereupon the defendants moved for a new trial, which motion was overruled, and judgment entered for said damages and costs.

By agreement entered in the record, a bill of exceptions was filed in the case, after the adjournment of court.

The evidence given on the trial is contained in a bill of exceptions, set out in the record, which is as follows :

Be it remembered, that on the trial of this cause at the said October term, A. D. 1860, of said Circuit Court, the said plaintiff, to maintain the issues on his part and behalf, gave in evidence to the court (the jury having been waived by consent of parties) as follows, to wit :

The assessment lists for the town of Warsaw, in the county of Hancock, and State of Illinois, for the assessment of real estate and personal property, for the year A. D. 1857, in said town, showing the property assessed in the name of J. F. Death & Sons.

There was no word or character in the columns headed " value," to show what the figures were intended to represent.

The plaintiff then called *William S. Hathaway*, who testified that he was the assessor for the town of Warsaw, in the county of Hancock, and State of Illinois, for the years 1857 and 1858, and that the foregoing assessment rolls were the original assessment rolls of said town, for said years 1857 and 1858. That the figures in the column headed " value " represented *dollars*, that there were no *cents* in the valuation, and that this applies as well to the assessment roll of lands for the year 1857, as to the assessment roll of personal property for the year 1858. Mr. Hathaway also testified, that as assessor for the years 1857 and 1858, he gave public notice for ten days before the last Saturday in June of each of said years, as the law requires, that the assessor, town clerk and supervisor of said town of Warsaw would attend at the town clerk's office of said town, on the last Saturday in June of each of said years, for the purpose of reviewing the assessment lists of said years, on the application of any persons conceiving himself aggrieved ; and that on said days he, as such assessor, and the town clerk and supervisor of said town, attended, on said days, at the office of the town clerk of said town of Warsaw, and that no objections were made by any person to the assessment. On cross-examination, he stated that the affidavits appended to the said assessment rolls were all the affidavits made by him on the return of said books.

To the giving in evidence of the assessment roll of real estate for the year 1857, and said assessment roll of personal property for the year 1858, and to the giving in evidence of what the figures in the column marked " value " in said assessment rolls indicate, by said witness, the defendants, by their counsel, objected ; and the court overruled said objection, and admitted the same, and the defendants at the time excepted.

The plaintiff then gave in evidence the record book of the board of supervisors of Hancock county, Illinois, identified by the testimony of the county clerk, F. M. Corby, and showed

thereby a levy of two hundred dollars, for town purposes, for the town of Warsaw; also a levy of twenty cents on the one hundred dollars' worth of taxable property, for county purposes, and a levy of sixteen cents on the one hundred dollars' worth of taxable property, for railroad purposes, for the said year 1858.

To the giving in evidence of the said levy of taxes, and the levy of railroad tax, the defendants, by their counsel, at the time objected, and the court overruled the objection, and admitted the same, and the defendants at the time excepted.

The plaintiff gave in evidence the collector's book for the said town of Warsaw, for the year A. D. 1858, with the warrant thereto attached.

To the giving of which collector's book and warrant in evidence, the defendants, by their counsel, objected; and the court overruled the objection, and admitted the same; to which ruling and opinion, the defendants at the time excepted.

The plaintiff then gave in evidence the copy of levy, notice of sale, and returns in writing of E. D. Baldwin, collector of said town for the year A. D. 1858, which were attached to said collector's book.

To the admission of which levy, said notice, and return of said collector Baldwin, as was attached to said collector's book, the defendants, by their counsel, at the time objected; and the court overruled these objections, and admitted the same, and the defendants at the time excepted.

The plaintiff then called *James McManus*, who testified that he lives in Warsaw, that he has lived there for two or three years; that he knew E. D. Baldwin, and that Baldwin left the county last spring; that he helped Mr. Baldwin, and was employed by him to take care of some wood which Baldwin said he had taken for taxes of J. F. Death & Sons. He helped Baldwin move it, along with some twenty or thirty other hands. This was in the latter part of April, or the first part of May, 1859. Baldwin claimed to have made a levy on said wood, and they were taking care of it. This wood was near and below Death's distillery.

Cross-examined. Did not know who put the wood there, nor how long it had been there; did not know where the wood came from.

The plaintiff then called *A. J. Ringold*, who testified that he helped cord up two hundred cords of this wood for the Messrs. Deaths, some time in the fall of 1858; that the wood lay in the neighborhood of Death's distillery, and on the bank of the river; Death & Sons claimed to own this wood, and paid him for cording the same; he hauled of this wood for two days for Henry Hill; Mr. Marsh also hauled at same time; he hauled six or

eight cords a day ; knows this lot of wood in controversy ; it was worth at that time $2.50 per cord ; paid Hill about that time $2.75 per cord ; heard Figley forbid Henry Hill taking the wood ; Hill said he intended to take it and burn it up.

Cross-examined. Assisted in cording two hundred cords of wood, the same that Baldwin sold ; the wood was brought there he thinks in the fall of 1858 ; some of it from the other side of the river, some from below from Mr. Death's land ; the wood he hauled for Hill is the same he corded up in the fall for Death & Sons ; some of this wood was oak, maple, walnut, hackberry and willow, and worth $2.50 per cord.

The plaintiff then called *J. J. Gilchrist,* who testified that he was a clerk for Death & Sons at the time of the levy and sale of this wood ; knew the wood below Death's hog-pens ; the Deaths claimed this wood ; was present at the sale by Baldwin ; Baldwin was selling as collector for taxes ; sold the wood to James G. Figley ; saw Hill's team hauling this wood after sale to Figley ; James F. Death, Absalom Death, and W. S. Death, composed the firm of Death & Sons ; one of the firm of Death & Sons was present at the sale.

Cross-examined. Saw Hill's team remove two loads. (The following question was then asked the witness by defendants.) Had you not been informed by Death and Mr. Baldwin both that Death had settled his taxes before this wood was levied on and sold ? (Objected to, unless Mr. Figley was present ; objection sustained.) Heard no conversation between Mr. Baldwin and Mr. Death about his taxes.

The following question was then asked : " Had you any conversation with Mr. Baldwin about Mr. Death's taxes before the wood was levied on, and if so, did not he (Baldwin) say Death had paid his taxes ?" (Objected to, and objection sustained, and opinion of court excepted to.) Does not know whether Death had settled his taxes or not, before the levy ; the wood he saw taken by Hill was that sold to Figley on the bank of the river.

The plaintiff then called *J. W. Ketchum,* who testified that he was city measurer for the city of Warsaw ; that he measured this wood in dispute ; that it measured 357 6-32 cords of wood ; this measurement was made about the 10th or 11th of May, 1859 ; the wood he measured was all on the bank of the river ; he measured it for Baldwin and Figley ; did not measure the wood at Clark's house.

Cross-examined. This wood was laid up close ; closer than wood was usually laid up ; there were no stakes at the end as he recollects.

The plaintiff then called *Samuel Marsh,* who testified that he knew this wood in dispute ; saw Ketchum measure it ; that he

hauled four or five days before the measurement; hauled half a cord to the load and hauled twelve or fourteen loads a day; hauled four or five days immediately before the measurement; he hauled afterwards with other teams to Hill, Knox & Co.; all the wood on the bank of the river was hauled to Hill, Knox & Co.'s distillery before the following winter; it was a good lot of wood.

Cross-examined. Hauled as much as twenty days; don't recollect whether any willow wood was in this lot; there was considerable elm; some of the wood had been under water.

The plaintiff then called *Thomas Brawner,* who testified that he was selling wood in the spring of 1859; that this kind of wood was selling in town from $2.50 to $3.00 per cord—$3.00 on the hill; that this wood was worth about $2.50 where it stood on the bank.

The plaintiff then called *Henry Stephens,* who testified that at the time Hamilton as deputy sheriff sold this wood, he gave notice for Edwin Baldwin, of his (Baldwin's) claim to the wood as collector, and notified the deputy sheriff not to sell; Henry Hill was present at the time; he sold green wood that winter for $3.00 per cord.

The plaintiff then called *John E. Johnston,* who testified that this wood was worth $2.25 to $2.50 per cord.

The defendants, to maintain the issues on their part, gave in evidence to the court as follows, to wit:

A judgment against Spencer & Co., rendered at the March term of the Hancock county Circuit Court, 1859, in favor of Hollowbush & Company, on which judgment an execution duly issued and came to the hands of the sheriff of Hancock county on the 28th day of March, 1859; and that the sheriff levied on the wood in dispute on the 12th day of April, 1859, and sold the same by virtue of said execution on the 30th day of April, 1859, to the defendants, except the defendant Hamilton.

The defendants then proved that said James F. Death & Sons were members of the firm of Spencer & Co., and that said execution was levied on said wood as the property of said James F. Death & Sons.

*Francis M. Corby* testified that he was clerk of the County Court of said county in 1858 and 1859, and is still clerk of said court; that the collector's book of the said town of Warsaw, for the year 1858, was copied from the collector's book of the preceding year, and not from the original assessment roll; that the original assessment roll contained no numerals or words indicating what the figures in the columns marked value indicated, and that he had added the same to the collector's book for 1858 when he made out the same.

Hill et al. *v.* Figley.

Cross-examined. That the collector's book from which he copied said collector's book had been compared with the original assessment roll.

*Samuel Scott* testified, that Dea 'i & Sons purchased the wood in dispute in the fore part of the spring of 1859, and that the same was worth at the time the defendants took the same, from $1.50 to $1.75 per cord, and that he hauled a part of this wood for Death to Warsaw in spring of 1859.

*George S. Winters* testified, that Death & Sons brought the wood in dispute to Warsaw, in the spring of 1859, and that the same was worth at the time the defendants took the same, from $1.50 to $1.75 per cord.

*J. J. Gilchrist* testified, that E. D. Baldwin's acting collector for the said town of Warsaw, sold said wood in dispute to the plaintiff on the 4th day of May, 1859 ; that at the time of the sale by the collector, one of the firm of James F. Death & Sons was present.

It was admitted by plaintiff that one hundred cords of the wood measured by witness Ketchum, had been recovered for in a former suit in trespass brought by said plaintiff Figley against a portion of these defendants, and that the same was not in controversy in this suit.

*Jasper Wells* testified, that wood of the quality of the wood in dispute, was worth at the time the defendants took the same, $1.50 per cord ; that he was selling wood at the time of same kind at that price.

The foregoing was all the evidence and admissions in the case, and thereupon, after hearing the arguments of counsel thereon, the court found the said defendants guilty, and assessed the plaintiff's damages at $514.

Thereupon the defendants, by their counsel, moved the court for a new trial, and after hearing the arguments of counsel, the court overruled the motion for a new trial, and the defendants, by their counsel, at the time excepted.

To which opinions of the court in finding said defendants guilty, in assessing the plaintiff's damages aforesaid, and in rendering judgment against said defendants, and in overruling the motion for a new trial, the said defendants, by their counsel, at the time excepted, and prayed the court to sign and seal this their bill of exceptions, which is done accordingly.

BROWNING & BUSHNELL, for Appellants.

WILLIAMS, GRIMSHAW & WILLIAMS, for Appellee.

WALKER, J. The issuing of the collector's warrant was prior
11

in date, and if it ever became a lien, it was before the judgment was recovered and the execution issued. It was dated on the 8th day of November, 1858, and the execution on the 28th of March following. A sale under the execution on the 30th day of April, 1859, could not defeat the sale under the collector's warrant on the 4th of May, unless the latter never became a lien on the property sold.

The objection urged against the collector's warrant, is, that the assessment roll, upon which it was based, was void for want of some character or word annexed to the numerals contained in the different columns headed valuation, to designate the sums which they were to represent. The 44th section of the revenue act of 1853, (Scates' Comp. 1042), provides that "no assessment of property, or charge for taxes thereon, shall be illegal on account of any informality in making the assessment, or in the tax lists, or on account of the assessment not being made or certified within the time required by law." Under this provision, in the case of *Munson* v. *Minor*, 22 Ill. 594, we held, that notwithstanding the law required the school officers to return to the clerk of the County Court, a certified plat of the school district, to enable that officer to extend the district tax upon the property assessed within its limits, such a tax extended on the collector's warrant, without the return of any plat, was valid and binding. This enactment embraces all informalities in the assessment roll, or in the tax lists, and is, we have no doubt, sufficiently comprehensive to embrace and cure the defect in this assessment roll. It is just such an informality as this that the legislature no doubt intended to remedy.

As the tax list was in all respects, on its face formal, if any defect existed it was in the assessment, and not apparent on the warrant, and became a lien on the property in controversy. When it became a lien, it was such as attaches under an execution, and is clothed with all of its incidents. *Hill et al.* v. *Figley*, 23 Ill. 418. Then had the warrant been a *fi. fa.* there could be no pretense that the execution under which appellant purchased, was superior to the lien of the collector's warrant. The lien attached the moment the warrant came to the hands of the collector, on all of the property of the tax payer, to the full extent of his taxes, and so continued until discharged, or until the return day. Then, as the lien of the collector's warrant on this property was prior in time, and superior to that of the execution, it could not be impaired or defeated by a sale under the *fi. fa.* although first made.

The warrant being formal and regular on its face, like an execution of the same character, was sufficient to protect the officer acting under it. And it has been held that a vendee of

chattels, under a *fi. fa.* acquires title, although the judgment on which it was issued was void. *Darby* v. *Russell*, 5 Hayw. 139. The evidence of a purchase of chattels, by the production of the execution under which the sale was made, is sufficient to establish title, as against the defendant in the execution. *Barkley* v. *Severns*, 1 Nott & McCord, 408 ; *Vance* v. *Reardon*, 2 ib. 399. Unless the purchaser of chattels at a sheriff's sale is the plaintiff, or is his agent, or is a privy, or has notice of an irregularity in the proceedings rendering the execution void, he is only required, to protect his purchase, to see that it is regular on its face. It is, however, otherwise with the plaintiff, a privy, or a purchaser with notice. The collector's warrant was designed to, and does confer the same authority, and performs the same office as a *fi. fa.* execution. And when regular and fair on its face, it protects the officer executing it, and those acquiring rights under it, to the same extent, and in the same manner, and with like effect as an execution. By the sale and the purchase of this property, under the collector's warrant, the plaintiff below became the owner, and has the right to recover for any injury to it, precisely as if acquired in any other legal mode.

We are unable to perceive any error in this record, and the judgment must therefore be affirmed.

*Judgment affirmed.*