CRAWFORD v. KOCH.

1. TAXATION — PERSONAL PROPERTY — STATUTES — NONRESIDENT OWNER—AGENT—CONSIGNMENT.

Property in the hands of a piano dealer belonging to a nonresident corporation, by which the pianos were consigned to the dealer, was validly assessed to the latter in accordance with 1 Comp. Laws, § 3837, as amended by Act No. 129, Pub. Acts 1907.

2. SAME.

Pianos so consigned and assessed to the dealer are not required to be assessed separately from other property owned by and assessed to him.

3. SAME—LIEN OF AGENT FOR TAXES PAID—DETROIT CHARTER.

The provisions of said public act, giving a lien to the agent or consignee for taxes paid upon property of another, assessed to him, create an enforceable lien, which takes effect as soon as the amount of the tax is determined. Detroit Charter (1904); 1 Comp. Laws, § 3863.

4. SAME—LIEN—PROPERTY SEIZED—ASSESSMENT.

Pianos in the hands of the consignee on April 1, 1908 and 1909,

when they were assessed, were subject to seizure for any part of the total tax levied on the property of said consignee.

5. SAME.

The nonresident owner was bound to take notice that its pianos in Michigan were subject to taxation in the hands of the consignee, and, if dissatisfied, should have appealed to the board of review.

6. SAME—PURCHASER IN GOOD FAITH.

A purchaser in good faith of pianos so assessed after the tax became a lien, took them subject to it.

Error to Wayne; Murphy, J. Submitted January 5, 1912. (Docket No. 166.) Decided March 29, 1912. Rehearing denied June 1, 1912.

Replevin by Grace V. Crawford against Max C. Koch, treasurer of the city of Detroit, for certain pianos. Judgment for plaintiff. Defendant brings error. Reversed.

*Walter Barlow* (*P. J. M. Hally*, of counsel), for appellant.

*Lucking, Emmons & Helfman*, for appellee.

STONE, J. This is an action of replevin, brought to recover from the defendant 42 pianos seized by him, as city treasurer, for the personal taxes assessed against F. J. Schwankovsky for the years 1907 and 1908, and against the F. J. Schwankovsky Company, Incorporated, on or about July 18, 1908, for the year 1909, on the stock of merchandise situated in the store, Nos. 238–240 Woodward avenue, in the city of Detroit. The conceded facts are substantially as follows:

On October 20, 1909, the plaintiff purchased the 42 pianos in question from the Cincinnati Discount Company for $5,250, and received a bill of sale of them. The pianos were removed on the same day by the Cincinnati Discount Company from a storage house in Detroit and delivered to the plaintiff, and by her placed in the store of I. S. Crawford & Co., No. 347 Woodward avenue, Detroit, and there displayed for sale. On November 29, 1909,

while the said 42 pianos were held by the plaintiff under said purchase, and in the possession of and exhibited for sale by her agent, I. S. Crawford & Co., at the place last above named, they were seized by the defendant, against plaintiff's protest, for the purpose of satisfying unpaid personal taxes assessed against F. J. Schwankovsky in the years 1907 and 1908, and against the F. J. Schwankovsky Company in the year 1909. Defendant, at the time of the seizure, certified that he seized the pianos as the property of the F. J. Schwankovsky Company, for the purpose of satisfying personal taxes assessed as above stated.

While defendant was in control of the pianos so seized, plaintiff commenced this suit in replevin to recover their possession, having previously stipulated with the defendant that no objection should be made to the form of the action. The pianos were then taken by the sheriff of Wayne county, under the writ of replevin, and delivered to the plaintiff; she having furnished a bond, as required by law.

Defendant concedes that but 10 pianos, of the value of $1,250, are now involved in this controversy, and admits that he has no claim whatever to the other 32 pianos. This admission is made, because it appeared on the trial of this case in the circuit court that no one of the said 32 pianos was in the store of the said Schwankovsky on the 1st day of April in either of the years 1907, 1908, or 1909. The said 10 pianos were owned by plaintiff's vendor, the Cincinnati Discount Company, and were in the said store of the said F. J. Schwankovsky, on consignment from the Cincinnati Discount Company, a nonresident of the State of Michigan, for sale. Schwankovsky's store contained, during the years 1908 and 1909, an average of 500 pianos, which were there on display for sale, among which, on the 1st day of April, 1908, was one of the said 10 pianos, and on April 1, 1909, were the other 9 of the said 10 pianos.

On October 18, 1909, the Cincinnati Discount Company,

at the request of the F. J. Schwankovsky Company, re-moved its said 42 pianos, among which were the 10 now claimed by the defendant, from said Schwankovsky's store to a storage warehouse in the city of Detroit, from which place, two days later, it sold and delivered the pianos to the plaintiff, as above stated.

On April 1, 1908, the city of Detroit, through its board of assessors, assessed F. J. Schankovsky's personal property at a valuation of $65,200. The tax roll of that year contains the following entry, and nothing more:

"City tax roll 1908. First Ward, location 238 Woodward avenue, Detroit, valuation personal property, $65,200. Amount of tax, $1,000.25, assessed to F. J. Schwankovsky."

On the back of the tax roll, the board of assessors certified that it contained a true statement of the aggregate valuation of the personal taxable estate of each and every person named in the roll.

The tax roll for the year 1909 is the same as in the year 1908, as respects the assessment against Schwankovsky, except that it is against the F. J. Schwankovsky Company, instead of F. J. Schwankovsky as an individual, and the amount of the tax is $1,178.19. The same certificate appears at the end of the roll as in 1908. The name of the Cincinnati Discount Company does not appear in the roll of either year.

The board of assessors, in making the assessment for the year 1908 against F. J. Schwankovsky, and the assessment for the year 1909 against the F. J. Schwankovsky Company, did not require Schwankovsky or his company to file a tax statement of their personal property subject to taxation; but merely notified Schwankovsky and Schwankovsky Company that upon their failure to file a tax statement their personal assessment would be $65,200. No tax statement having been filed in either year, the board made no attempt or effort to compel the same, but merely fixed the assessment for each year at the sum as above stated.

Defendant and appellant does not seek to hold plaintiff's 10 pianos simply for the taxes assessed upon them, but seeks to hold them for the taxes assessed against Schwankovsky upon 500 other pianos which never belonged to the plaintiff, but were in stock. The unpaid personal taxes assessed against F. J. Schwankovsky and the F. J. Schwankovsky Company, in the years 1908 and 1909, exceed the aggregate value of the 10 pianos in question, which is $1,250.

The defendant, at the close of the trial, moved the court to direct a verdict in his favor for the sum of $1,250, the aggregate value of said pianos at $125 each, upon the ground that these identical pianos were in the store at the time the respective assessments were made, and that he had a lien thereon for the taxes assessed, so far as their value would go to discharge said taxes. This motion was denied by the court, and, on the contrary, the court directed a verdict in favor of the plaintiff, holding that she was entitled to the possession of the entire 42 pianos, and assessed her damages at the sum of six cents. Judgment was duly entered on said verdict in favor of the plaintiff.

The defendant has brought the case here for review, and there are only two assignments of error:

(1) That the court erred in directing a verdict in favor of the plaintiff on the motion of her attorneys; and (2) the court erred in denying the motion of the attorney for defendant to direct a verdict in favor of said defendant.

The two assignments of error may well be considered together.

The taxes for the year 1907 being entirely eliminated from the controversy, we may direct our attention to the taxes for the years 1908 and 1909. It is the claim of the defendant that the 10 pianos, above enumerated, are liable for the taxes assessed on said stock of merchandise in said store for the two years last named up to the value of the same, and that he is entitled to a verdict and judgment in the suit for the sum of $1,250.

The Detroit city charter provides that:

"All city taxes upon personal property shall be and remain a lien thereon until paid, and no transfer of the personal property assessed shall operate to divest such lien." Section 221, Charter of 1904.

It appears that the 10 pianos now in question were the property of the Cincinnati Discount Company, a nonresident of this State, when they were assessed; but they were in the store of F. J. Schwankovsky, or the F. J. Schwankovsky Company, at the time the assessments were made, consigned to them for sale, and commingled with the stock of pianos of Schwankovsky, or Schwankovsky Company, in said store.

Subdivision 8 of section 3837, 1 Comp. Laws, as amended, provides that:

"Personal property of non-residents of the State * * * shall be assessed in the township or ward where the same may be, to the person having control of the premises, store, * * * place of storage or warehouse where such property is situated in such township, on the second Monday in April of the year when the assessment is made."

Section 3847, as amended, provides, among other things, as follows:

"Property assessed to one other than the owner shall be assessed separate from his property, and shall show in what capacity it is assessed to him, whether as agent, guardian or otherwise."

It is the contention of the plaintiff that this property was not lawfully assessed, because it did not comply with the provision last quoted. It is worthy of note, however, that this provision in section 3847 is a general one, providing for the assessment of property generally to agents, guardians, and other persons acting in a representative capacity; while subdivision 8 of section 3837 deals specifically with the personal property of nonresident owners. It is here speaking of the manner in which the property of nonresident owners may be assessed, and it is provided that such property, to wit, the personal property of non-

resident owners, shall be assessed to the person having control of the premises, store, etc. The remainder of this subdivision, as amended in the act of 1907 (Act No. 129, Pub. Acts 1907), proceeds to point out the remedy which the person may have against whom the property is assessed; and it is provided:

"That the person, persons or corporations so assessed for any such property belonging to a nonresident of this State shall be entitled to recover from the owner of such property, by a suit in attachment, garnishment or for money had and received, any amount which the person, persons or corporations so assessed are compelled to pay because of such assessment, and shall have a lien upon said property as security against loss or damage because of being so assessed for the property of another, and may retain possession of such property until such lien is satisfied "— provision then being made that the owner may secure release of the same on giving the bond therein provided for.

This court had occasion to pass upon the substantial provisions of these statutes in the case of *Pioneer Fuel Co.* v. *Molloy*, 131 Mich. 465–468 (91 N. W. 750, 751), and there pointed out the distinction between that case and the instant case in the following language:

"The question remains whether, under an assessment in form such as this, property of the present plaintiff could be seized, where the property assessed *was not* the property seized, and not the property of the present plaintiff. It is conceded in the brief of plaintiff's counsel that, had the property actually assessed been seized, it would be immaterial in what name it was assessed. But it is contended that, the plaintiff being a nonresident of the State, and not in fact owning any property subject to the jurisdiction of the taxing officers, it is not due process of law against this plaintiff to assess property of a third party to plaintiff's assumed agent, and then subject the plaintiff's own property to the payment of the tax.

"1 Comp. Laws, § 3837, provides for the assessment of property, under circumstances such as those existing in the present case, to the person having control of the premises, store, mill, dock, yard, piling ground, place of storage, or warehouse. Section 3847 provides that assessments to one other than the owner shall show in what

capacity it is assessed to him; and, as we held in *Spanish River Lumber Co.* v. *Bay City*, 113 Mich. 181 (71 N. W. 595), this section does not limit the authority conferred upon the assessing officers by section 3837 to assess property to the person having control.   It is very clear that, under the authorities, the assessment to the person having control makes such person personally responsible for the tax.   See *Forster* v. *Brown*, 119 Mich. 86 (77 N. W. 646); *Spanish River Lumber Co.* v. *Bay City, supra; Township of Orion* v. *Axford*, 112 Mich. 179 (70 N. W. 417); *Minneapolis & Northern Elevator Co.* v. *Traill County* [9 N. D. 213], 82 N. W. 727 (50 L. R. A. 266); *Lockwood* v. *Johnson*, 106 Ill. 334.

"This tax was therefore a valid tax against Mr. Beattie."

It is the further contention of the plaintiff that there is no machinery provided by law in the city of Detroit to enforce this lien, and that there is no provision of law which specifies when the lien becomes effective.   We cannot agree with this contention.   The charter of the city of Detroit provides that the board of assessors shall, before the 1st day of April in each fiscal year, assess at its true cash value all of the real and personal property subject to taxation by the laws of this State within the limit of each ward, respectively, of said city.   It will be noted that here the charter provides for the assessment being made against the property itself, rather than against the persons in possession of the property at the time the assessment is made, as is provided by the general tax law of the State, which is as follows ·

"All personal property, except as hereinafter provided, shall be assessed to the owner in the township in which he is an inhabitant, on the second Monday in April of the year for which the assessment is made."   1 Comp. Laws, § 3836.

The description of personal property on the assessment roll may be made by using the word "personal" only. Section 3849.   We have already quoted the city charter provision that the city taxes shall remain a lien upon per-

sonal property until paid, and that no transfer of the personal property shall operate to divest or destroy such lien. The general tax law provides that:

"All personal taxes shall also be a lien on all personal property of such persons so assessed, from and after the first day of December in each year, and shall take precedence of any sale, assignment, or chattel mortgage, levy or other lien, on such personal property, executed or made after said first day of December, except where such property is actually sold in the regular course of trade." 1 Comp. Laws, § 3863.

Under the provisions of the city charter, the lien for taxes against personal property would become complete as soon as the amount of tax against it was determined. 37 Cyc. p. 1142; *Eaton* v. *Chesebrough,* 82 Mich. 214–220 (46 N. W. 365); *Jacobs* v. *Union Trust Co.,* 155 Mich. 233–235 (118 N. W. 921).

The charter of the city of Detroit gives the receiver of taxes authority to seize and sell personal property for unpaid taxes. It is as follows:

"On and after the first day of August in each year, and at any time until the taxes mentioned in this section are paid, it shall be the duty of the receiver of taxes, and the clerks or subordinates in his office, designated by him for that purpose, to collect all unpaid taxes which are assessed against any property or value other than real estate, and, if necessary, the said receiver and said clerks or subordinates, under the direction and in the name of the receiver, shall have power to levy upon and sell at public auction the personal property of any person refusing or neglecting to pay such tax." Charter City of Detroit 1904, § 221.

It must, we think, be held that, under the charter, the lien for taxes would become complete when the common council fully and finally confirmed the tax roll, certainly as early as the first day of August in each year. Here, we think, is ample authority for enforcing the lien created by the charter on personal property for taxes assessed thereon.

The manner in which this tax was assessed, we think, becomes unimportant in view of section 3922, 1 Comp. Laws, and the decisions thereunder. This is recognized in the case of *Pioneer Fuel Co.* v. *Molloy, supra,* where the court, referring to this statute, says:

"This curative provision might be urged if the property assessed were that in controversy in the case."

Here it is to be borne in mind that the property in controversy is a part of the property that was assessed. See, also, *City of Menominee* v. *Lumber Co.*, 119 Mich. 201 (77 N. W. 704); *Bradley* v. *Bouchard*, 85 Mich. 18 (48 N. W. 208); *Fletcher* v. *Post*, 104 Mich. 424 (62 N. W. 574); *Iron Star Co.* v. *Wehse*, 117 Mich. 487 (76 N. W. 66); *H. M. Loud & Sons Lumber Co.* v. *Hagar*, 118 Mich. 452 (76 N. W. 980).

So we come back to the main question in the case, and that is whether there was a lien upon the 10 pianos in stock, and whether the property may be taken as though the lien was a mortgage, not simply for the tax upon the 10 pianos, but for any portion of the whole tax up to value of the property seized.

In 37 Cyc., at page 1141, the author says:

"Taxes on personal property do not constitute a lien upon it, unless it is so declared by the statute. But when such a lien is given it generally attaches to all the taxable personalty of the owner, and not separately to each item or piece of property for the tax assessed against that article."

The author cites the following in support of this text: *Hill* v. *Figley*, 23 Ill. 418; *Commonwealth* v. *Walker*, 80 S. W. 185, 25 Ky. Law Rep. 2122; *Farmers' Loan & Trust Co.* v. *Memminger*, 48 Neb. 17 (66 N. W. 1014); *Reynolds* v. *Fisher*, 43 Neb. 172 (61 N. W. 695); *Hill* v. *Palmer*, 32 Neb. 632 (49 N. W. 718); *Foster & Smith Lumber Co.* v. *Leisure*, 3 Neb. (Unof.) 267 (91 N. W. 556). See, also, *Bridewell* v. *Morton*, 46 Ark. 73. We have examined the authorities here referred to, and it is sufficient to say that they support the text.

We cannot agree, therefore, with the contention that the property is liable only for the tax assessed against the specific property. It will be borne in mind that the property is taxed as a whole. The taxes assessed upon this property are the extent of the lien or charge upon the class; but, the taxes being assessed upon it as a whole, each several article is liable *in solido* for the taxes of the class to which it belongs, just as they would be if all were included in a mortgage, or condemned by the decree of the court. In this respect, the rule is not different from that applied in this State to log lien cases, where it has been repeatedly held that any part of the property is liable and subject to lien for work done on any other part of the property. See *Chadwick* v. *Broadwell*, 27 Mich. 6, and *Hughes* v. *Tanner*, 96 Mich. 113 (55 N. W. 661), where the rule has been applied that, the contract being entire, any part was subject to the lien for work done on any other part.

The discount company was bound to know that its pianos in the possession of Schwankovsky were subject to taxation in Detroit. If not satisfied with the manner of the assessment, it should have appealed to the board of review. Failing to do so, it cannot be heard in the courts in such a case as this. *Michigan Sav. Bank* v. *City of Detroit*, 107 Mich. 246 (65 N. W. 101); *Hinds* v. *Township of Belvidere*, 107 Mich. 664 (65 N. W. 544).

The plaintiff is in no better position than the company from whom she purchased, after the taxes were a lien. We are of opinion that the court erred in directing the verdict for the plaintiff as to the 10 pianos, and that upon this record the defendant was entitled to a verdict for the sum claimed by him.

For the error pointed out, the judgment is reversed, and a new trial ordered.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.