BEAR RIVER PAPER & BAG CO. et al. v. CITY OF PETOSKEY et al.

(Circuit Court of Appeals, Sixth Circuit.    April 3, 1917.)

No. 2943.

1. COURTS ⚽366(6)—RULES OF DECISION—DECISIONS OF STATE COURTS—LIEN FOR TAXES.

The question whether the lien of a mortgage on personal property is paramount to the lien for the personal property tax is a question of state law, governed by the state decisions.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 961.]

2. STIPULATIONS ⚽3—QUESTION OF LAW.

A stipulation as to statute law of a state is not binding on the courts, if erroneous.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. § 2.]

3. RECEIVERS ⚽99(3)—PAYMENT OF TAXES—LIEN.

The federal court, whose receiver is in possession of the property of a corporation and conducting the business, thereby enjoying the protection and benefits of the state, county, and municipal governments, will order the receiver to pay the personal property taxes assessed on such property, which were levied against the corporation, but which might have been levied against the receiver under Comp. Laws Mich. § 3837 (6), regardless of whether such taxes are, under the state law, a lien on the property superior to the lien of the mortgage.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 186.]

4. RECEIVERS ⚽99(3)—TAXES—PAYMENT BY RECEIVER.

A decision by the state court that a receiver appointed by it need not pay personal property taxes assessed against the property does not prevent the federal court from directing its receiver to pay such taxes in due recognition of the benefits received.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 186.]

5. RECEIVERS ⚽99(3)—PAYMENT OF TAXES—INTEREST.

The collection fees and interest on delinquent taxes are merged in an order directing the receiver to pay the taxes, which is in effect a judgment, and the interest rates so specified did not extend beyond the day of the order.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 186.]

Appeal from the District Court of the United States for the Western District of 'Michigan; Clarence W. Sessions, Judge.

Suit by the City of Petoskey and another against the Bear River Paper & Bag Company and its receivers to collect personal taxes. From an order directing receivers to pay the taxes, the corporation and its receivers appeal. Affirmed.

Clapperton, Owen & Hatten, of Grand Rapids, Mich., for appellants.

Kleinhans, Knappen & Uhl, of Grand Rapids, Mich., for appellees.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

DENISON, Circuit Judge. Suit for personal taxes assessed by the city of Petoskey for 1913, 1914, and 1915, against the Bear River Paper & Bag Company. Such personal taxes became payable on January 10th following such several assessments. July 7, 1910, the Bear River Paper & Bag Company executed a trust mortgage to the International Trust Company, of Boston, on all its property and assets, including the property now in custody and control of receivers hereinafter mentioned, to secure its bonds of $200,000, with interest, and such mortgage was duly recorded. June 22, 1911, receivers were appointed by order of the court below of all assets and business of the Bear River Paper & Bag Company, and such receivers have been "continually since that time, and now are, in possession and control of all the property" of the Paper & Bag Company, though at times they have rented it "to another company for operation." May 24, 1916, the court below entered an order directing the receivers within 30 days to pay to the city of Petoskey, or its treasurer, the taxes in dispute, together with fees and interest thereon, amounting to $3,275.48, and, further, that if no funds are available the receivers may apply to the court for permission to sell a sufficient amount of "the property assessed" to provide funds for such payment, or else for authority to issue receivers' certificates for such payment. The Paper & Bag Company and its receivers appeal.

[1] The question is whether the lien of the mortgage is paramount to the right of Petoskey to receive from the fund or property in the hands of the receivers the amount of the taxes so assessed. So far as this question involves conflicting liens, it is one of Michigan law, and its solution depends upon the construction and effect to be given to the cases of Lucking v. Ballantyne, 132 Mich. 584, 94 N. W. 8, and Crawford v. Koch, 169 Mich. 372, 135 N. W. 339. It is the theory of the general taxation laws of Michigan that taxes upon land are assessed against the property itself in the place where it lies, and that at a stated time a lien therefor attaches to the land, without regard to any change of ownership or of interest which may have occurred. Taxes upon personalty are assessed against the owner at his place of residence. This is done (usually) without listing or identifying any items of property, but by one lump assessment against the item "personal." This "personal" assessment creates a debt against the owner, but never becomes a lien against the property assessed merely because it is the property assessed. At a fixed date, about six months later, this debt becomes a

lien against all the personal property the owner then has, although the identity of his property may, in the meantime, have wholly changed. It seems to follow that a transfer or mortgage made by the owner of the property which he had at the date of the assessment, and which is made before the statutory date for the attaching of the lien, conveys a title or interest superior to the tax lien which thereafter comes into existence; and this is, in substance, the holding in Lucking v. Ballantyne. It was there thought that the tax involved must be considered as if assessed against some person, and not as if assessed against the property itself. In Crawford v. Koch a personal tax was held to create a lien enforceable against the property, although no tax had been assessed against its real owner. The tax in question was treated as one levied against the property and creating thereon a lien which did not depend upon or require the support of any personal obligation by the owner.

It is not easy to reconcile these two cases. Both relate to a tax upon that class of property which, for taxation purposes, may have a situs distinct from the owner's. Both relate to taxes levied by the city of Detroit under the same charter powers. Both relate to the lien of the tax as against a title or lien existing before the tax was levied, and in neither case had there been any transfer of the prior interest after the assessment and before the lien day. If the Crawford Case is rested on the thought that, because the owner was a nonresident, the assessment was valid, although made against one not the owner, that furnishes no distinction, since in the Lucking Case the validity of the assessment was not attacked because it had not been made against the right person. No distinguishing ground for the Crawford Case remains, unless it be that, because the owner was a nonresident and because of the theory of the law concerning the taxing of property of nonresidents, the assessment should be treated as one in rem, and not as one in personam. As we have already indicated, we think this must be regarded as the theory of the decision. It seems not very consistent with some of the results reached; but it is not to be supposed that the court intended to overrule the Lucking Case without mentioning it.

When we come to apply these two cases, thus interpreted, to the instant case, the result is not clear. The governing provisions of what we may call the Petoskey charter used the formula of assessment which is used in the general tax law for nonresidents, and so tend to characterize the assessment as in rem; but the charter provides for assessing the personal property of both residents and nonresidents by the same section and in the same language, making no distinction, and the assessments in question were made against the nonresident owner as if in personam under the theory of the general tax laws. The facts of the present case are essentially like those of the Lucking Case, except that the person assessed, the mortgagor, is here a nonresident. Whether the holders of the secured credits were nonresidents did not appear in that case or in this.

[2] There is, however, another consideration. What has so far been said is upon the theory that, as is recited in the stipulation of the parties, these taxes "became liens on the personal property of the own-

er on December 1st following the assessments respectively," although it is evident that this statement tends to classify the case with Lucking v. Ballantyne, as being an assessment against the owner, rather than with Crawford v. Koch, as being an assessment against the property. However, this stipulation relates wholly to a matter of Michigan statutory law, and we cannot be bound by it, if it is erroneous. Swift v. Hocking Co. (March 6, 1917) 243 U. S. 281, 37 Sup. Ct. 287, 61 L. Ed. ——.

It is settled that taxes on personal property do not constitute a lien upon it unless it is so declared by statute. Crawford v. Koch, supra, 169 Mich. 381, 135 N. W. 339. Petoskey is organized under the general law providing for cities of the fourth class, which law constitutes chapter 88 of the Michigan Compiled Laws of 1897. The subject of the assessment and collection of taxes is covered by the 20 sections of chapter 31 of this act. C. L. §§ 3318–3337. The charter of Detroit, considered in the two cases above discussed, expressly provides that "all city taxes upon personal property shall be and remain a lien thereon until paid." Crawford v. Koch, supra, 169 Mich. 377, 135 N. W. 339. Chapter 31 of the act governing Petoskey contains no such declaration, nor any express provision whatever on that subject. The lien in question can be developed only (if at all) through the force of section 18 (C. L. § 3335) which provides that:

"For the purpose of assessing and levying taxes in any city incorporated under this act * * * each ward shall be considered the same as a township, and all provisions of law relative to the collection of taxes levied in townships shall apply to the collection of taxes levied and assessed by the supervisors in such city, except as herein otherwise provided."

A provision giving a lien for taxes is seemingly not reached by the statement that the ward is to be considered the same as a township for the purpose of assessing and levying taxes, and it is not easy to say that such a lien-giving provision is a "provision of law relative to the collection of taxes"; but even if it were, it would not be imported into this act if it is "herein otherwise provided." The general tax laws referring to townships declare, as parts of one section (C. L. § 3863), that on the 1st day of December, assessments on real estate become a lien on the property assessed, and personal taxes become a lien on all personal property on that day owned by the person who had been so assessed on the preceding May. The lien on real estate "shall continue until payment thereof," and the lien on personalty "shall take precedence of any sale, assignment, chattel mortgage, levy or other lien executed or made after such first day of December." In chapter 31 of the Cities Act, this subject is treated by section 14 (C. L. § 3331), which, in its entirety, says:

"All taxes levied in any ward tax roll, shall be and remain a lien upon the lands upon which they are levied until paid."

The special law thus provides a present lien upon land only in place of the postponed liens of the general law upon land and personalty. Whether this statutory situation indicates the presence or absence of the lien here claimed, counsel have not argued, and we do not discuss it further.

[3] We think it unnecessary to decide the question of lien. These taxes were owing to the state, the county, and the city as the consideration for governmental benefits enjoyed by this property and this business during three years. The property has been in possession of the receivers, and the business has been conducted by them. It is not claimed that any other tax has been assessed in this state against them, or against the property, or against the mortgagor, or mortgagee, or mortgage bondholders. It might have been assessed against the receivers, for C. L. § 3837 (6), says:

"Personal property mortgaged or pledged shall be deemed the property of the person in possession thereof, and may be assessed to him."

It is not claimed that the taxes are unjust or in any way inequitable. Under these conditions, and even if it were to be assumed that the taxes had not become a lien against the property, or that, through the mistake of the assessing officers, no enforceable debt against the receivers had arisen, a due regard for the rightful burdens of all citizens and residents toward the state government, and a due recognition of benefits received should impel a federal court to direct its receiver to make payment. Such payment, in the absence of a meritorious objection to the tax, we regard as the receiver's clear duty; and so it has been held, in substance, if not specifically. In re Tyler, 149 U. S. 164, 187, 13 Sup. Ct. 785, 37 L. Ed. 689; Coy v. Title Co. (C. C. A. 9) 220 Fed. 90, 92, 135 C. C. A. 658, L. R. A. 1915E, 211.

[4] We need not say that the holding in the Lucking-Ballantyne Case, that the receiver ought not to pay the tax, is not obligatory upon the federal courts, so far as concerns the ground upon which this opinion rests.

[5] The statutes provide for certain collection fees and for interest at 1 per cent. per month upon delinquent taxes. It is not certain that this applies to taxes not collected through the county treasurer, but which, like these, have been paid by the city to the state and county. No objection was made to including these items in the order for payment; but we cannot extend this rate of interest beyond the date of the order, which is, in effect, a judgment merging the existing demands.

The order will be affirmed, with interest at 5 per cent. from its date.