H. A. WHITACRE, INC. *v.* UNITED STATES (No. 3850)[1]

---

[1] T. D. 47615.

United States Court of Customs and Patent Appeals, March 25, 1935

*Walden & Webster* (*J. L. Klingaman* of counsel) for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*William Whynman*, special attorney, of counsel), for the United States.

[Oral argument February 4, 1935, by Mr. Klingaman and Mr. Whynman]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant imported at the port of New York, on various dates from April 14, 1924, to August 30, 1928, certain shipments of articles afterwards stipulated to be works of art. These were classified after entry, by the collector at the port, as manufactures of marble under paragraph 233 of the Tariff Act of 1922.

The importer filed twenty-two protests covering all of the entries, in which it claimed the goods to be free of duty under paragraph 1704 or 1708, or, alternatively, dutiable as works of art under paragraph 1449 of said act. The protests under said paragraphs 1704 and 1708 are not insisted upon by the appellant, but the issue is confined to the claim by the importer that the goods are dutiable under said paragraph 1449 which is as follows:

PAR. 1449. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same; statuary, sculptures, or copies, replicas, or reproductions thereof; and etchings and engravings; all the foregoing, not specially provided for, 20 per centum ad valorem.

Prior to the submission of the cause in the trial court, the parties entered into the following stipulation:

It is hereby stipulated and agreed between counsel that the merchandise described in Schedule "A" hereto annexed and made a part hereof, consists of works of art which are the professional productions of a sculptor; that said articles are carved from marble and that they are not originals nor first or second replicas, and that the protests may be submitted, the right to a first docket call and to amend the protests being hereby waived.

Dated New York, December 11, 1933.

WALDEN & WEBSTER,
*Attorneys for Plaintiff.*
RICHARD E. FITZGIBBON,
*For the Assistant Attorney General,*
*Attorney for the United States.*

Schedule "A", mentioned in said stipulation, shows the invoice description of the goods involved in the twenty-two protests to have been "crucifixes", except in Protest No. 266921–G/42013, in which

the invoice description of the contents of cases 7338, 7340, 7342, 7346, and 7348 was "crosses", and in protest No. 90634–G/70425, in which the contents of cases 8 and 9 bore the invoice description "dogs."

The case was submitted on said stipulation, the proceedings on the various protests being consolidated for purposes of trial. The United States Customs Court held that the said stipulation of facts was not sufficient, under the law, to justify a finding that the goods were dutiable under said paragraph 1449. The court held, in a very well considered and well expressed decision, that the definition of the term "works of art" in said paragraph included only works of the free fine arts, and that a stipulation that they were works of art was not sufficient to bring them within said paragraph. In support of this proposition, the court cited a large number of cases in this court, including *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132, T. D. 42214, and the last of which is *Alexander & Oviatt* v. *United States*, 21 C.C.P.A. (Customs) 97, T. D. 46410, and then overruled the protests. In this decision the court followed the law as many times expressed by this court.

Following this decision, the importer filed an application for rehearing. This petition for rehearing represented that the court had been in error in its construction of said stipulation, it being argued that a stipulation to the effect that the imported goods were works of art carried with it the concession that they were works of the free fine arts.

A rehearing was granted on March 21, 1934. On May 9, 1934, the parties entered into the following additional stipulation:

In addition to the facts heretofore agreed upon, it is hereby further stipulated and agreed between counsel as follows:

1. That the articles in question are products of the free fine arts.
2. That the protests may be submitted upon this and prior stipulation.
Dated New York, May 9, 1934.

WALDEN & WEBSTER,
*Attorneys for Plaintiff.*
WILLIAM WHYNMAN,
*For the Assistant Attorney General,*
*Attorney for the United States.*

May 17, 1934. Disapproved:
  GENEVIEVE R. CLINE, *J.*
  WILLIAM J. KEEFE, *J.*
  WALTER H. EVANS, *J.*
H. H. Crum, *Examiner.* 5/10/34.
A. K. Thomas, *C. A. Appraiser.*

On May 17th following, the three judges of the Third Division of the court made a notation upon said stipulation, "Disapproved", which was signed by each of the judges. On May 22nd, the cause

came up for hearing. On this hearing, the record shows, in substance, that the judges of the division were of opinion that counsel for the parties had stipulated a conclusion of law which was not binding upon the court. The court requested counsel for the importer to call Mr. Crum, the examiner, who had approved the later stipulation of May 9, 1934, as a witness. Counsel for the importer refused to do this, insisting that the facts had been stipulated. Thereupon the court called the witness Crum and, over objections, examined him as to his reasons for changing his mind relative to the dutiability of these imported goods.

The examiner stated, when he was finally permitted to make an explanation, that it was the administrative practice to classify goods of this kind as works of the free fine arts when he first had charge of this line of importations; that, afterward, the practice changed because it was believed that even though the figure of Christ upon these crucifixes was a work of the free fine arts, that it was a part of the crucifix of minor value, and, therefore, that the goods should be classified as manufactures of marble. However, thereafter, records were submitted to the office, and those in charge of classification became advised that the corpus of Christ was the part of major value of the article, and that, therefore, the original practice of considering the article as a work of the free fine arts was the proper practice, and that in 1928 the office returned to the practice of classifying such articles as works of the free fine arts under said paragraph 1449, and had continued this practice since that time. This testimony was delivered on May 22, 1934.

The witness Crum also stated that when he approved the last stipulation he was of the impression that the stipulation concerned crucifixes only. It also appears from his testimony that the crucifixes are used as grave markers.

The trial court was of opinion that the stipulation was not binding upon the court, relying largely upon the opinion in *Swift & Co.* v. *Hocking Valley Railway Co.*, 243 U. S. 281. Thereupon, the stipulation was rejected and the protests were overruled.

The trial court doubtless felt, and not without reason, that the parties, if they were intending to simplify the issues or to effect a compromise of the case, should have done so by stipulation in the first instance of all the facts, in this way avoiding the necessity of a piecemeal consideration of the case. The procedure of counsel, in this respect, does not commend itself.

The importer has appealed and alleges as errors the failure of the court to hold the imported goods dutiable under said paragraph 1449, in rejecting the stipulation, and in calling and examining the witness Crum over the protest of the appellant.

When the matter came on for hearing before this court, counsel for importer moved to dismiss his appeal as to those items involved in the appeal, bearing the invoice description of "crosses" and "dogs", which have been hereinbefore specifically mentioned. As to the crucifixes, counsel for the importer insists that the first stipulation, supplemented by the second, should have been accepted and acted upon by the trial court, and that as a result thereof the goods should have been classified under said paragraph 1449 as works of the free fine arts. On the other hand, counsel for the Government files a brief in which it is contended as follows: That the trial court, when dissatisfied with the stipulation, might call a witness "*ex mero motu*" to ascertain the true facts; that the stipulation was not binding, but that it must be considered with other evidentiary facts of record and be given such weight as the court might deem proper; that the court might set aside the stipulation on—

the ground of fraud, duress, mistake of fact or against public policy, or under such other circumstances which may appeal to the discretion of the Court in the interest and furtherance of justice;

that the examiner was mistaken as to the facts contained in the second stipulation, and that the court below acted within its powers in rejecting the stipulation and finding the goods not dutiable under said paragraph 1449.

The first point for consideration is: Was the second stipulation of May 9, 1934, one of law or one of fact. If it were merely an agreement of the parties as to a conclusion of law to be deduced from certain facts, then it was not within the power of the parties to perform what is, obviously, a judicial function. If it were merely an agreement of the parties as to the material facts of the case, then, under ordinary circumstances, it was within the power of the parties to do this. *Bear River Paper & Bag Co. et al.* v. *City of Petosky et al.*, 241 Fed. 53; *Pacific Trading Co.* v. *United States*, 19 C. C. P. A. (Customs) 361, T. D. 45508.

The parties hereto had, in their first stipulation, agreed that the imported articles were works of art, were carved from marble and were the "professional productions of a sculptor." This, however, was not sufficient to bring the imported articles within the scope of said paragraph 1449. They must also be works of the free fine arts. A long line of cases in this court have firmly established this rule. It is unnecessary here to cite these many cases. *United States* v. *Olivotti & Co.* 7 Ct. Cust. Appls. 46, T. D. 36309, is the one most commonly referred to. Our most recent expression upon the subject is *United States* v. *Ehrich*, 22 C. C. P. A. (Customs) 1, T. D. 47019.

If the first stipulation did not establish facts sufficient to justify a finding that the imported articles were works of the free fine arts, what elements were lacking? That inquiry is answered by our lan-

guage used in the *Olivotti* case, *supra*. In considering that language, we must bear in mind that if these imported articles are to be held to be works of the free fine arts, it is because they are sculptures. In the *Olivotti* case we made use of this expression, which has been often quoted by us since its pronouncement:

\* \* \* Sculpture as an art is that branch of the free fine arts which chisels or carves out of stone or other solid material or models in clay or other plastic substance for subsequent reproduction by carving or casting, imitations of natural objects, chiefly the human form, and represents such objects in their true proportions of length, breadth, and thickness, or of length and breadth only. \* \* \*

In other words, the facts necessary, in addition to those admitted by the first stipulation, to establish that the imported articles here were sculptures and works of the free fine arts, were that the articles were "imitations of natural objects, chiefly the human form," representing "such objects in their true proportions of length, breadth, and thickness, or of length and breadth only," chiseled or carved "out of stone or other solid material" or models "in clay or other plastic substance for subsequent reproduction by carving or casting." If such facts were supplied, the imported articles would be classifiable as works of the free fine arts under said paragraph 1449.

Each element here is a fact, susceptible of proof. If the question of whether an article be a work of the free fine arts or not is an ultimate fact, why may not the parties not dispense with proof and agree to such ultimate fact? To permit them to do so, facilitates and expedites the work of the courts, encourages compromise and lessens litigation. In our opinion, it was not the intent of the parties, in making the stipulations here involved, to attempt to stipulate the "legal effect of admitted facts," but rather to agree upon the essential facts upon which judgment might be entered by the court.

This case is much different from *Swift & Co.* v. *Hocking Valley Railway Co.*, *supra*. In that case the amended petition set forth an agreement, by which it fully appeared that the Swift company was a licensee only of certain lands owned by the railway company. The Swift company demurred, thus admitting all material facts in the petition. Afterwards the parties stipulated "for the purpose only of reviewing the judgment," that the "cars in question were placed" upon "the private track of Swift and Company." The Supreme Court held that the court might not be controlled by the agreement of counsel on a subsidiary question of law, if the stipulation were to be construed as an agreement concerning the legal effect of admitted facts. The court also was of the opinion that counsel might not agree to certain facts which were not the real facts in issue, for then the case would be moot. The stipulation, therefore, was held to be a nullity.

No such case is here presented. The second stipulation does not create a different state of facts than that set forth in the first stipulation, but rather should be considered as adding to and supplementing the facts first agreed to.

We have, on numerous occasions, upheld the right of the parties, through their attorneys, to stipulate facts and to settle and compromise the litigated subject matter. A clear expression of our views appears in *Pacific Trading Co.* v. *United States, supra.* There we said:

* * * We know of no good reason why, in the absence of fraud, reputable attorneys, representing the parties in litigation, may not freely agree upon and stipulate concerning ultimate facts, even though such stipulated facts control the result of the lawsuit. Where there is nothing apparent of imposition, unfairness, or dishonesty, importer's counsel and the attorney for the Government, in cases like the one at bar, have the right to confess judgment or consent to a decree against their respective clients, *United States* v. *Zucca & Co., supra,* and we are at a loss to understand why they can not stipulate an ultimate fact which controls the kind of judgment to be rendered. In the case at bar there is no implication of unfairness, imposition, or dishonesty.

* * * * * * *

In the interest of saving time and expense, it is often desirable, and clearly within the rights of the parties litigant, to agree by stipulation to the elimination of what might otherwise be controverted issues. This is frequently done, and we think properly so, by agreeing as to ultimate facts which are controlling of such issues. We know of no good reason why stipulations entered into by an attorney representing the United States Government in a lawsuit should be treated by the court differently from stipulations entered into by attorneys representing other clients.

Similar views were expressed in *Smith & Nichols (Inc.)* v. *United States,* 18 C. C. P. A. (Customs) 16, T. D. 43974; *United States* v. *Zucca & Co.,* 11 Ct. Cust. Appls. 167, T. D. 38959.

There is here no suspicion of imposition, unfairness or dishonesty, even were we to consider the testimony of Examiner Crum, called and examined by the court. Whether the court was acting within its rights in so calling Crum, is not material here, for, in our view of the matter, the situation was not altered by his testimony. It should be borne in mind that neither stipulation was the stipulation of this examiner, but was that of the Assistant Attorney General, who had full power to bind the Government.

The Assistant Attorney General is not in position here to attempt to be relieved from the effects of such stipulation. "The Government made no effort to be relieved from its stipulation and, so long as it stands, it is binding upon the parties and the court." *Smith & Nichols (Inc.)* v. *United States, supra; United States* v. *Cartier, Inc.,* 20 C. C. P. A. (Customs) 215, T. D. 45994; *Carnegie Steel Co.* v. *Columbia Iron Co.,* 185 U. S. 403, 444.

The theory of the Government counsel that the stipulation is only evidentiary in its character, or that it may be overcome by testimony,

is absolutely untenable. No testimony tending to establish facts contrary to the facts stipulated can be considered by us. *United States* v. *Cartier, Inc., supra.* The stipulation should have been accepted as establishing the facts in the case. *United States* v. *Champion Coated Paper Co. et al.*, 22 C. C. P. A. (Customs) 414, T. D. 47422.

It is suggested that the imported articles cannot be classified as works of the free fine arts because they are, as shown by the first stipulation, not "originals nor first or second replicas." No such contention was made by either counsel in the case, is not mentioned in the assignment of errors, and was not mentioned or relied upon by the trial court in its decision. The trial court simply held that the second stipulation "is not binding on the court."

But if this point were in the case, it is, in our opinion, without merit. Said paragraph 1449 provides for "statuary, sculptures, or copies, replicas or reproductions thereof." The first and second stipulations, combined, are to the effect that the imported articles are the professional productions of a sculptor, carved from marble, not originals or first or second replicas, and are *products of the free fine arts.* The effect of such stipulations is that these articles are reproductions, and works of the free fine arts.

But, it is urged, a reproduction cannot be a work of the free fine arts, and that we have so stated in *United States* v. *Olivotti & Co., supra,* and in *United States* v. *Wanamaker,* 19 C. C. P. A. (Customs) 229, T. D. 45336. We find no expression in the first cited case that intimates any such view. In the *Wanamaker* case, *supra,* we had before us reproductions of certain ancient linen tapestries, such reproductions having been made by skilled needle-women, said to have been artists. The testimony showed that the originals were considered to be artistic, and "a work of art." The court called attention to the distinction which had always been made by this court, as in the *Olivotti* case, *supra,* between articles which were works of the decorative arts and those of the free fine arts, and commented upon the fact that, so far as the record showed, the imported articles might well belong to the decorative arts. There was no proof that either the originals or the reproductions were works of the free fine arts. The court properly held that the imported articles could not be held to be works of the free fine arts. There was no holding in that case to the effect that if the reproductions had been shown to be works of the free fine arts, they could not be so classified, because not originals.

The appeal is *dismissed* as to the merchandise contained in cases numbered 7338, 7340, 7342, 7346, and 7348, in protest 266921–G/42013, and cases numbered 8 and 9, in protest 90634–G/70425. We agree with the conclusion of the trial court as to the protest claims under said paragraphs 1704 and 1708. As to the claim under said

paragraph 1449, our views are as hereinbefore expressed and the judgment is *reversed* and the cause is *remanded* for further proceedings in conformity herewith.

GARRETT, Judge, dissents.

LENROOT, Judge: I am compelled to dissent from the conclusion reached by the majority herein, reversing the judgment of the United States Customs Court with respect to the crucifixes in the involved importations, for I am convinced that the trial court did not err in rejecting or declining to give probative force to the second stipulation of the parties hereto.

The stipulations are quoted in the majority opinion, and in my opinion the second stipulation, which, it is stated, is in addition to the facts stated in the first stipulation, amounts only to a conclusion of law, construing the first stipulation contrary to the construction given by the trial court to that stipulation in its first decision.

It is so well established that an agreed statement as to the law does not conclude the court that it hardly needs citation of authority to support the proposition. It was expressly so held in the case of *Salomon Co.* v. *United States*, 7 Ct. Cust. Appls. 5, T. D. 36255. This case was cited with approval by us in the case of *North American Mercantile Co.* v. *United States*, 18 C. C. P. A. (Customs) 74, T. D. 44030.

I am in hearty accord with all that is said in the majority opinion with respect to stipulations of fact; I differ with the majority only in its holding that the stipulation that the articles here involved are "products of the free fine arts" is a stipulation of fact. Both of the stipulations must concededly be read together; so read, we have in substance a stipulation that the involved articles consist of works of art which are the professional productions of a sculptor; that they are carved from marble, and that *they are not originals* and are not first or second replicas of originals, and as a conclusion from the foregoing, that the involved articles are products of the free fine arts. There is no stipulation that the articles are copies or reproductions of works of the free fine arts, nor is there any stipulation that the originals were works of the free fine arts.

As I view the last stipulation, it is an attempt to stipulate that works of a professional sculptor, carved from marble, but not originals, are works of the free fine arts. This to me is clearly a question of law and has been decided many times by this court adversely to the conclusion embodied in the second stipulation.

That to be a work of art in a tariff sense an article must be an original and a work of the free fine arts has been established by the cases de-

cided by this court. In the leading case of *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T. D. 36309, we said:

\* \* \* In our opinion, the expression "works of art" as used in paragraph 376 [tariff act of 1913] was not designed by Congress to cover the whole range of the beautiful and artistic, but only those productions of the artist which are something more than ornamental or decorative and which may be properly ranked as examples of the free fine arts, or possibly that class only of the free fine arts imitative of natural objects as the artist sees them, and appealing to the emotions through the eye alone. \* \* \*

We have in many cases approved the foregoing.

In my opinion the case of *United States* v. *John Wanamaker*, 19 C. C. P. A. (Customs) 229, T. D. 45336, is squarely in point upon the question here involved and should control our decision here. The question in that case was whether certain tapestries, claimed to be reproductions of "Queen Mathilda tapestries", were dutiable as reproductions of works of art. After citing with approval the case of *United States* v. *Olivotti & Co.*, *supra*, we held that it had not been shown by the record that the originals were works of the free fine arts, and that therefore the reproductions of the same, *although made under the direction and supervision of an artist*, were not reproductions of "works of art." The court, speaking through Judge Hatfield, said:

It not having been established that the original tapestries were works of art, in a tariff sense, the articles before us can not be held to be reproductions of "works of art", although they were produced under the direction and supervision of an artist. \* \* \*

In the case last cited, if it had been stipulated that upon the facts there shown the reproductions there involved were products of the "free fine arts", would it not clearly have been stipulating the very question of law that we decided in that case?

It is my contention that whether or not an article stipulated to be not an original can be a work of the free fine arts is solely a question of law. Paragraph 1449 itself distinguishes between works of art and copies and reproductions of works of art. Had the stipulation here involved contained a provision that the involved articles were copies or reproductions and that the originals were works of the free fine arts, a different question would have been presented.

The majority opinion omits any discussion of the critical provision of the first stipulation that the involved articles are not *originals* or first or second replicas, and omits any discussion of the omission from the stipulation of an averment that the originals were works of the free fine arts, but holds that a reproduction may be a work of the free fine arts irrespective of whether or not the original is a work of the free fine arts. I shall discuss this feature hereinafter.

That I am correct in my conclusion that the second stipulation is only a conclusion of law from the facts set out in the first stipulation is supported by a colloquy between counsel and the court set out in the record. It appears therefrom that Mr. Whynman, Government counsel, stated:

The second stipulation incorporated the first stipulation, and in the first stipulation *where all the facts were set out*—my understanding of the Court's ruling, they overruled it merely on the theory it was not shown whether it was industrial art, or came under the other kind of arts, but it was a work of art, the Court so accepted and agreed. (Italics mine.)

Counsel for appellant, who was present, made no objection to this statement. Obviously, if all the facts were set out in the first stipulation, then the second stipulation is only a conclusion of law.

In the brief of counsel for appellant we find the following:

In the *Progressive Fine Arts Co.* case, *supra*, [18 C. C. P. A. (Customs) 306, T. D. 44506,] the stipulation was to the effect that the merchandise was oil paintings, the original work of an artist, which in legal effect is precisely the same as the stipulation at bar.

Here counsel for appellant overlooked the fact that the first stipulation in the case at bar recites that the involved articles *are not originals or first or second replicas,* and does not recite that the originals were works of the free fine arts.

The majority opinion also overlooks this fact, for the facts that it holds were contemplated by the last stipulation would establish that the involved articles are original works of the free fine arts, while the first stipulation, made a part of the second stipulation, is to the contrary.

I appreciate that counsel for the respective parties might have entered into a stipulation that would have effectually disposed of the case; it would have been a simple matter to have done so, but evidently it was the thought of counsel for both parties that originally a question was presented to the court for judicial determination. That question was judicially determined; a new trial was ordered and, upon the second trial, instead of either proving or stipulating facts from which a conclusion of law could be drawn, counsel presented in the form of a stipulation their own conclusion and again submitted the case, evidently for the purpose of judicial determination. In my judgment, had the Customs Court accepted the conclusion of the second stipulation, in view of the first stipulation being still effective, it would clearly have committed an error of law in so doing.

I confess my surprise at the holding of the majority that a reproduction of a statue or a painting may be a work of the free fine arts irrespective of whether or not the original was a work of the free fine arts. This is the first time this court has ever made any such hold-

ing, and, as hereinbefore stated, it is directly contrary to many decisions of this court. The majority opinion states as follows:

\* \* \* The effect of such stipulations is that these articles are reproductions, and works of the free fine arts.

But, it is urged, a reproduction cannot be a work of the free fine arts, and that we have so stated in *United States* v. *Olivotti & Co., supra,* and in *United States* v. *Wanamaker,* 19 C. C. P. A. (Customs) 229, T. D. 45336. We find no expression in the prior case that intimates any such view. \* \* \*

In my opinion said case of *United States* v. *Olivotti & Co., supra,* does clearly imply that a work of the free fine arts must be original and not a reproduction, but if there be any doubt upon that point it is set at rest by our opinion in the case of *Friedlaender Co.* v. *United States,* 19 C. C. P. A. (Customs) 198, T. D. 45295, where Presiding Judge Graham, speaking for the court, said with respect to works of art provided for in paragraph 1449 of said Tariff Act of 1922:

\* \* \* If the originals were not works of art, then the imported articles could not be copies, replicas, or reproductions of works of art.

It is conceded in the case at bar that there was no stipulation that the originals of the imported articles were works of the free fine arts.

In said case of *United States* v. *Olivotti & Co., supra,* we held, speaking of certain of the articles there involved:

\* \* \* they are not the expression of the *sculptor's impulse* to imitate some object in nature *as he conceived it to be,* \* \* \*. (Italics mine.)

The majority opinion in the case at bar holds that the involved articles are reproductions; if, they are reproductions they in themselves can not be expressions "of the sculptor's impulse to imitate some object in nature as he conceived it to be", and this would be true even though the originals were clearly works of the free fine arts. In other words, reproductions can not in themselves be works of the free fine arts, and paragraph 1449 recognizes this by expressly providing not only for works of art, but for reproductions of the same. Accordingly, in the case at bar, since the first stipulation shows that the articles involved are not originals, it follows that they can not be works of the free fine arts, and the second stipulation therefore amounts to nothing but an attempt to stipulate a conclusion of law directly contrary to the law as decided by this court, and as clearly intended by Congress.

The majority opinion clearly misconstrues our opinion in the case of *United States* v. *Wanamaker, supra,* hereinbefore discussed. The majority opinion states:

\* \* \* There was no holding in that case to the effect that if the reproductions had been shown to be works of the free fine arts, they could not be so classified, because not originals.

The opinion of this court in said *Wanamaker* case clearly states at the beginning that the lower court had held that the articles there

involved were "works of art" within paragraph 1449 of the Tariff Act of 1922. Thus there was presented squarely to this court a holding of the Customs Court that articles conceded to be reproductions were in themselves "works of art" within the meaning of the term as used in said paragraph 1449. The judgment of the Customs Court in said case was reversed by us; in other words, we held that the articles involved were not works of art within the paragraph, although made under the direction and supervision of an artist. It is significant that, in arriving at that conclusion, this court in said *Wanamaker* case did not consider the possibility of the reproductions in themselves being works of art under said paragraph, notwithstanding the trial court's holding, and consistently so for, under the *Olivotti* case, *supra*, reproductions could not in themselves be works of the free fine arts for reasons hereinbefore set out. What the court did do was to find that the originals, the "Queen Mathilda tapestries", were not shown to be works of the free fine arts; this being found to be the fact, we proceeded only to hold that, since the originals were not shown to be works of the free fine arts, the articles there under consideration could not be reproductions of works of art within the paragraph. In other words, being reproductions, the sole possibility of their coming within the paragraph lay in their being reproductions of works of the free fine arts. It is also significant to note that, in declaring that there was no proof that the original tapestries were works of the free fine arts, we said that "there is nothing to show that, when finished, they represented the 'realized sentiment of the artist.'" This is the test to be deduced from the *Olivotti* case, *supra*, and it follows that no reproductions can respond to it.

The majority opinion states that the question here discussed was not raised by the assignments of error, and was not mentioned or relied upon by the trial court in its decision. Appellant specifically assigns error by the trial court in rejecting the second stipulation, which brings to us for review the ruling of the trial court rejecting said stipulation. As for the trial court not relying upon this point in its decision, it did directly pass upon the binding effect of the second stipulation, and that was the principal question before it. While I do not agree with all of the grounds stated by the trial court for holding that the stipulation was not binding, its conclusion was right. In the case of *Winter Bros.* v. *United States*, 19 C. C. P. A. (Customs) 113, T. D. 45245, this court said:

It is well-settled law that if the court below came to a correct conclusion and rendered a correct judgment, its judgment will not be reversed because of the method of reasoning which may have induced such judgment. It is the judgment of the court which is appealed from, and not its decision or opinion. *United States* v. *Tausig & Pilcer*, 18 C. C. P. A. (Customs) 421, T. D. 44681.

Moreover, the record shows that upon the second trial of the instant case the trial court upon two occasions objected to the second stipulation upon the ground that it stipulated the law in the case.

I wish to say frankly that while, as hereinbefore stated, I am in hearty accord with all that is said in the majority opinion with respect to stipulations of fact, the facts surrounding this case are such that if there be doubt concerning the effect of the second stipulation it should be resolved in favor of affirming the judgment of the trial court. Of course I am convinced that there was nothing fraudulent in the making of the stipulations, and appellant's counsel was warranted in securing from the Government, if he could, a stipulation covering the facts as he believed them to exist, but I do think that the second stipulation was improvidently made by the Government. I do not contend that, even though improvidently made, if it be a stipulation of fact, it is not binding so long as the Government has not by appropriate action been relieved therefrom; but I do contend that this is a fact that may be considered in resolving doubts as to the construction of this second stipulation, although the general rule is, of course, that doubts with regard to the dutiability of goods should be resolved in favor of the importer.

The history of the protests here involved is stated in the decision of the trial court as follows:

* * * The oldest case included herein was first called for trial in September 1925, nine years ago. The latest case appeared on the docket for the first time in November 1930, nearly four years ago. The others were docketed from time to time during the intervening years as they were forwarded to the court by the collector. In all of these cases which were called for trial prior to 1927, continuances were requested and granted each time they appeared upon the calendar. At all dates upon which any of the cases were called for trial during the year 1927 and thereafter, suspensions under pending test cases were requested and granted over a period of six years. *All of the test cases under which these protests thus were suspended, eventually were decided against the contentions of the importers;* and in October 1933 the court ordered all of the cases at bar placed upon the trial calendar. Thereafter, two continuances of one month each were granted, until December, 1933, when for the first time these cases, some of which were ten years old, were submitted. These submissions, however, were not upon competent evidence introduced at a trial of the issues, but were upon a stipulation between counsel initialed by the examiner, agreeing that the articles here in controversy, which had been released from customs custody five to ten years previous thereto, were in fact works of art, but not originals nor first nor second replicas of original works of art. As hereinbefore stated, this division considered such a stipulation insufficient to support a finding that the articles were entitled to classification as works of art under paragraph 1449, and overruled the protests. Plaintiff requested a rehearing, contending that the said stipulation was sufficient, and the motion was granted; whereupon plaintiff attempted to resubmit the cases on an additional stipulation between counsel, approved and signed by the examiner, agreeing that the said articles are works of the free fine arts. (Italics mine.)

It thus appears that at the time of the first trial of the case at bar some of the protests involved had been pending in the Customs Court for ten years, that the latest of the protests had been pending four years; that suspensions under pending "test cases" were requested and granted over a period of six years; that all of the "test cases" were decided in favor of the Government; and that thereafter the Customs Court, *upon its own motion*, ordered all of the protests involved in the case at bar to be placed upon the trial calendar. Thereupon the first stipulation in this case was filed, and upon said stipulation the trial court overruled the protests. Upon the granting of a rehearing the second stipulation was filed, but with respect to said stipulation Government counsel stated in open court that the first stipulation set out all the facts in the case, and this was not denied by counsel for the importer, who was present.

In view of the history of the case, even though there be doubt with respect to the construction of the second stipulation, which I do not concede, such doubt should be resolved in favor of the conclusion of the trial court that said second stipulation was not binding upon it.

Summarizing my conclusions, the involved articles are not classifiable as works of art under said paragraph 1449 because, as established by the first stipulation, they are not originals. *United States* v. *Olivotti & Co., supra.* Neither can they be classified as reproductions within said paragraph because the record does not establish that the originals were works of the free fine arts. *United States* v. *Wanamaker, supra.*

In my view it is unnecessary to consider whether the trial court erred in calling upon its own motion a witness and examining him. If there was such error, it was not prejudicial to appellant for, upon the stipulations under which the case was submitted, the classification made by the collector appeared to be correct and the protests were properly overruled.

In my opinion the judgment of the Customs Court in the respects here discussed should be affirmed.