PERSON, STONE, OSTRANDER, and STEERE, JJ., concurred with BROOKE, C. J.

---

ST. JOSEPH'S CHURCH *v*. CITY OF DETROIT.

1. TAXATION—EXEMPTION—CHURCH PROPERTY.

A lot owned by a city church and used as a tennis court for a part of the time after its purchase, being intended for a parsonage, which the plaintiff commenced to erect after the taxes for the year had been assessed and which was occupied by its rector in November of that year, was properly assessed, and could not be treated as exempt property until it was actually used for religious purposes. 1 Comp. Laws, § 3830, subd. 5, as amended by Act No. 174, Pub. Acts 1911.

2. SAME—DEFINITION.

A parsonage may be defined as a house in which a minister of the gospel resides; it may be with land or without it.

3. SAME—ASSESSMENT—DETROIT CHARTER.

Under the charter of the city of Detroit, property is required to be assessed before the first of April, and the taxes become an indebtedness of the owner from the time of listing the land for assessment. The taxes levied become a lien on the first of July.

4. SAME—STRICT CONSTRUCTION.

It is a cardinal rule that exemption statutes, unlike homestead statutes, should receive a strict construction.

5. Same.

A grant of exemption from taxation is never presumed; on the contrary, in all cases of doubt as to the legislative intention, or as to the inclusion of particular property within the terms of the statute, the presumption is in favor of the taxing power and the burden is on the claimant to establish clearly his right to exemption.

Error to Wayne; Codd, J.   Submitted October 27, 1915.   (Docket No. 150.)   Decided December 21, 1915. Rehearing denied June 23, 1916.

Assumpsit by St. Joseph's church against the city of Detroit to recover back taxes paid under protest. Judgment for plaintiff.   Defendant brings error.   Reversed; new trial denied.

*Walter Barlow* (*Harry J. Dingeman,* of counsel), for appellant.

*John J. Gafill,* for appellee.

Stone, J.   This is an action in assumpsit to recover certain general city taxes assessed upon certain real estate of the plaintiff for the year 1913, and paid under protest by the plaintiff.   There are no disputed facts in the case.   They were agreed, by stipulation filed, to be as follows:

"Plaintiff is an Episcopal Church, organized under the laws of the State of Michigan, in the year A. D. 1887, for purposes of public worship, and has continuously conducted religious services from the date of its organization down to the present.

"That from and after its organization, religious services were conducted in the church building on the northeast corner of Medbury and Woodward avenues, and so continued until on or about, to wit, the year 1907.   The property at the corner of Medbury and Woodward avenues was sold in 1907 and the money received for the equity in the property at the corner of Medbury and Woodward avenues was used to apply on the purchase of the following described property:

"Lot 1 of J. W. McLaughlin's subdivision of the westerly 1,492 feet of the northerly half of lot 4, and the westerly 1,492 feet of lot 5 of the subdivision of quarter section 44, 10,000-acre tract, in the city of Detroit, this lot having a frontage of 117.44 feet on Woodward avenue, and 200 feet deep on Holbrook avenue;

"Also lot two of J. W. McLaughlin's subdivision of the westerly 1,492 feet of the northerly half of lot 4 and the westerly 1,492 feet of lot 5 of the subdivision of quarter section 44, 10,000-acre tract, in the city of Detroit, Wayne county, Michigan, this property having a depth of 130 feet on Woodward avenue and 200 feet on King avenue.

"The above-described lots 1 and 2 are located on Woodward avenue, between Holbrook and King avenues, being adjoining lots and having a frontage of 247.44 feet on Woodward avenue, and having a depth of 200 feet on Holbrook and King avenues, as above set forth.

"That the church property at the corner of Medbury and Woodward avenues was never assessed or taxed, during the time it was used and occupied as a church, that is, from 1887 down to the date of sale, the same being treated as exempt under the law.

"That the property on Woodward avenue between Holbrook and King avenues was purchased in 1907. That this property was purchased exclusively for church purposes, and for constructing thereon church buildings, and the plan at the time of purchase was to utilize the property, by putting a large church building in the center of the property, facing Woodward avenue, and the parsonage on the King avenue side of the property, and the church house on the Holbrook avenue side, and sketches were made at the time of purchase of this general plan. On account of the expense involved in putting up the large building, the church built temporarily, a church house, for religious services on the Holbrook side of the property. This was done in 1907, and religious services have been conducted in this building down to the present time, this church building occupying lot 1 hereinbefore described. On or about the 1st day of April, 1912, the establishment of a tennis court was authorized by the

vestry, upon lot 2, and this tennis court was established for the benefit of the members of the church, and at the church expense. The tennis court is still in existence and maintained by the church and used by the church members.

"That on or about the 22d day of July, A. D. 1912, a resolution was passed authorizing the construction of the parsonage on lot 2, and the contract for the construction of the parsonage was let on or about, to wit, the 7th day of April, A. D. 1913, and the actual work begun on or about, to wit, April 10, 1913, and the rector moved into the parsonage on or about, to wit, November 15, 1913. None of the property above described was assessed or taxed from the time the church acquired same until 1912, when the assessing officers placed on the rolls lot No. 2 above described, and the tax was paid by the church in 1912. Lot 2 was again assessed for the year 1913. This tax the church refused to pay, and presented the matter to the board of review for cancellation, on the grounds that the property was exempt, as the construction of the parsonage had actually been started about, to wit, April 10, 1913. The board of review, however, declined to remove the assessment. Later the matter was presented by petition to the common council for cancellation, which petition was denied, and the following resolution passed by the common council February 16, 1915, to wit,

" 'To the Honorable the Common Council—

" '*Gentlemen:*

" 'Your committee on taxes, to whom was referred the petition of the St. Joseph's Episcopal Church, asking for the cancellation of the taxes on lot 2, Joseph R. McLaughlin's subdivision of the w'ly 1,492.92 ft. of the N. ½ of lot 4 and the w'ly 1,492.92 ft. of lot 5 of the sub. of ¼ sec. 44, 10,000-acre tract, for the year 1913, respectfully report that we find this property was purchased by the society prior to the year 1908, and that the building of a parsonage thereon was done in 1913, the property was prematurely exempted from taxation for the years 1908, 1909, 1910, 1911, and 1912. The assessors, finding it still vacant in 1913, placed it on the rolls, but, in 1914, finding that a parsonage had been built, and was at that time occupied, exempted the property from further taxation.

" 'Your committee have, for many years, taken the position

that under the laws of the State of Michigan, which exempts from taxation such properties as are owned and occupied by religious societies for religious purposes, that such exemption applies only to such properties, after the building is occupied and used for religious services therein, or as a parsonage.

" 'The St. Joseph's Church, due to the premature exemption mentioned, has already received a benefit of five years' exemption from taxation on this lot, to which, in our opinion, they were not really entitled. Your committee, however, owing to the existing misunderstanding, as this tax for the year 1913 having been levied, recommend that the society be permitted to pay the taxes due for that year, without the penalty and interest charges, and we herewith submit the proper resolution and recommend its adoption. [Signed by Committee.]' "

Thereupon a resolution of the common council was unanimously adopted, directing the city treasurer to accept the actual amount of the tax, canceling all penalty and interest charges thereon, provided the same should be paid within 30 days from the adoption of the resolution. Thereafter, and on April 6, 1915, the full tax, with penalty and interest, was paid by plaintiff, under protest, claiming that the property was exempt from taxation, under the statute.

Upon the foregoing statement of facts, and the pleadings, each party moved the trial court for a directed verdict in its favor. The court directed the jury to return a verdict for the plaintiff, for the full amount claimed, which was done, and a judgment was entered thereon. The defendant has brought error. The only errors assigned are, to the refusal to direct a verdict for the defendant, and the direction of a verdict for the plaintiff. The only question presented by the record is whether said lot 2 was properly assessed for general city taxes for the year 1913.

The taxation, or exemption from taxation, of said lot 2 for said year, depends on the construction to be placed upon section 3830, subd. 5, 1 Comp. Laws, as amended by Act No. 174, Pub. Acts 1911, which reads as follows:

"The following real property shall be exempt from taxation: * * *

"5. All houses of public worship with the land on which they stand, the furniture therein and all rights in the pews, and also any parsonage owned by any religious society of this State and occupied as such."

A parsonage may be defined as a house in which a minister of the gospel resides. In its ecclesiastical sense the word was "glebe (or land) and house" belonging to a parish appropriated to the maintenance of the incumbent, or settled pastor of a church; but its modern general signification is in the sense of its being the residence of a parson, and it may be with land or without it. 29 Cyc. p. 1693; *Wells Estate* v. *Church*, 63 Vt. 116 (21 Atl. 270).

It will be borne in mind that the contract for the construction of the parsonage in the instant case was let on or about April 7, 1913, and the actual work begun on or about April 10, 1913, and the rector moved into the parsonage on or about November 15, 1913.

We agree with the claim of appellant that the dominant feature of the statute is that such parsonage must first be occupied as a parsonage, before it can be held to be exempt from taxation. In other words, it is an essential requirement of the statute that the parsonage must be occupied as such before it can be legally exempted from taxation. Whether, after such occupancy, a mere temporary vacancy would render it subject to taxation, we need not decide.

The Detroit city charter requires that:

"The board of assessors shall before the first day of April in each fiscal year, assess at its true cash value all the real and personal property subject to taxation by the laws of this State, within the limits of each ward, respectively, of said city."

Also that:

"All city taxes shall become a debt against the

owner from the time of the listing of property for assessment by the board of assessors, and shall become due and payable forthwith upon the receipt of the tax roll by the receiver of taxes."

As we understand the charter, the assessment becomes conclusive April 1st, unless it is modified by the board of review. *City of Detroit* v. *Patten,* 143 Mich. 243 (106 N. W. 884). And the taxes levied become a lien on the real estate assessed on July 1st, when the tax rolls go into the hands of the city treasurer for collection. *Eaton* v. *Chesebrough,* 82 Mich. 214 (46 N. W. 365) ; *Jacobs* v. *Trust Co.,* 155 Mich. 233, 235 (118 N. W. 921) ; *Crawford* v. *Koch,* 169 Mich. 372, 380 (135 N. W. 339).

It is a cardinal rule that exemption statutes—unlike homestead statutes—should receive a strict construction. Cooley on Taxation (2d Ed.), p. 205. Statutes providing for exemption from taxation must be understood as exempting only as therein specified.

A grant of exemption is never presumed ; on the contrary, in all cases of doubt as to the legislative intention, or as to the inclusion of particular property within the terms of the statute, the presumption is in favor of the taxing power, and the burden is on the claimant to establish clearly his right to exemption. See 37 Cyc. pp. 891, 892, and cases cited, including *East Saginaw Manfg. Co.* v. *City of East Saginaw,* 19 Mich. 259 (2 Am. Rep. 82) ; *Attorney General* v. *Common Council,* 113 Mich. 388 (71 N. W. 632). We have accordingly held that only such lands of a railroad company as are held and presently used for railroad purposes are exempt from taxation on the general roll; the exemption not applying to lands acquired by the company, with a view to future use. *Auditor General* v. *Railroad Co.,* 119 Mich. 682 (78 N. W. 889) ; *Auditor General* v. *Railroad Co.,* 114 Mich. 682 (72 N. W. 992).

The statute there under consideration provided that the specific taxes on a railroad company should be in lieu of all other taxes, except such land as was "not actually occupied in the exercise of its franchise, and not necessary, or in use in the proper operation of the road." A careful examination of the statute, and the authorities cited, lead us to the conclusion that the lot involved in the instant case was legally taxed for the year 1913.

The judgment of the circuit court is therefore reversed, and no new trial will be granted.

BROOKE, C. J., and PERSON, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.