343 Mich. 291 (1955)
72 N.W.2d 287
In re SMITH ESTATE.
CENTRAL TRUST COMPANY
v.
DEPARTMENT OF REVENUE.
Docket No. 47, Calendar No. 46,455.
Supreme Court of Michigan.
Decided October 3, 1955.
Foster, Foster & Campbell (James R.B. Hovey, of counsel), for plaintiffs.
Thomas M. Kavanagh, Attorney General, Edmund E. Shepherd, Solicitor General, T. Carl Holbrook and William D. Dexter, Assistants Attorney General, for defendant.
Amicus Curiae:
Bodman, Longley, Bogle, Armstrong & Dahling (Pierre V. Heftler and Richard D. Rohr, of counsel), for Children's Aid Society.
SMITH, J.
There is no dispute concerning the facts. George E. Smith, a resident of Lansing, Michigan, died testate on November 3, 1952. He left a substantial amount of property to Adele Hineline Davis, who was the legitimate natural daughter *293 of Smith's adopted daughter. Our question involves the taxation of such property under the Michigan inheritance tax statute.[*] After certain probate rulings, *294 which need not here be summarized, the circuit court for Ingham county determined that Mrs. Davis was not a "lineal descendant" of the decedent, as that term is employed in the taxing act, and therefore was not entitled to the preferences enjoyed under such act by lineal descendants. The coexecutors take a general appeal to this Court.
The positions of the parties may be very simply stated. The appellants contend that the natural child of an adopted child is a "lineal descendant" of the adopting parent and is thus entitled to the exemption and lower tax rates provided in section 2, supra. The appellee says not.
The problem before us is one of first impression in this State. It admits of no simple resolution. Its complexity arises from considerations of the most sacred nature in which differing groups of human relationships are involved: An adopted child, his natural parents and kin, his adoptive parents and kin, the community, and society as a whole. The wisdom required in the adjustment of such relationships is described in 1 Kings, 3:16-27. We must do the best we can with the statutes given us.
*295 What is the position of the adopted child in its foster family? Social scientists regard the process of adoption as one of integration and complete absorption, the adopting family becoming in all respects save one (the biological) the natural family. 1 West Res L R 133. This was in many respects the view of the Roman law, particularly as to the form of adoption known as adrogation. The individuals brought into a family by adoption obtained the same rights as if they had been born in the family. Succession of Mary Unforsake, 48 La Ann 546 (19 So 602). So far was the identification carried that the adoption must imitate nature. A eunuch could not adopt, but an impotent person might because he might be cured. The identification of the adoptee seems complete and in accord with the views of our social scientists. Yet what of the natural family of the adopted person? Should the adopted child succeed to any of its property? Should the adoptee's property pass in any part to its natural parents? What if the property came to it from its natural family? From its adoptive family?
Desirable as complete identification with the adoptive family may seem to be, and it is warmly urged upon us, it cannot be forgotten that adoption cannot make a son in fact and nature out of one who is not a son. The legislature can provide that he may, in the respects named by it, be treated in law as if he were a son. But he retains his identity as an individual having a natural family, and it is the adjustment of these individual and sometimes ancestral rights which give rise to our problems. Not surprising, then, is it that we find the Roman law undergoing a change. Justinian's statute restored the adoptee's rights of succession in his natural family, in addition to his new rights in his adopted family. 2 Sherman, Roman Law in the Modern World (2d ed), p 90. To simplify a complex relationship *296 is easy; to have it remain simplified is another matter.
Many of the Roman motivations for adoption, however, such as the perpetuation of the rights of family religious worship, were inappropriate to our ancestors. In addition, the use of adoption as an heirship device in England was probably precluded by the nature of the English feudal system and the English reverence for heirs of the blood of the ancestor. See Kuhlmann, Intestate Succession By and From the Adopted Child, 28 Wash U L Q 221. At any rate, it is clear that the right of adoption was not recognized by our English common law. It is of fairly recent statutory origin and it is to the enabling statutes, then, that we must look for the status of the adopted child, not to the common law, nor to the civil law.
The Michigan adoption act of 1861 became the law of our State shortly after the passage of the Massachusetts act which was the progenitor of many of its type. PA 1861, No 26[**] provided for change of name of the adopted child and that he might become the heir-at-law of the adoptor, but as to the balance of his newly-acquired relationship, particularly as to property rights, it was silent. It remained for the legislatures, through the years, to supply the missing provisions as the need therefor became felt. Thus the inability of the adopted child to inherit from the collateral kin of the adoptor, Moritz v. Wayne Circuit Judge, 291 Mich 190, has been the object of legislative attention (PA 1955, No 84[]) even since the present action was instituted. As we review the statutes, it seems fair to conclude *297 that the legislature of this jurisdiction has been assimilating gradually the rights and status of the adopted child to those of the natural child. Yet we note that differences still remain between the adopted child and his natural foster brother. The adoptor, for instance, inherits as of course from his natural son, but the extent of his inheritance from his foster son depends upon the property interest involved. (Compare CL 1948, § 702.94 [Stat Ann 1943 Cum Supp § 27.3178 (164)] with CLS 1954, § 702.86 [Stat Ann 1955 Cum Supp § 27.3178 (156)].) It is not our purpose to exhaust a catalog of differences, or to comment upon the wisdom, or lack thereof, demonstrated by the differences themselves. Their significance, for our purposes, is that our legislature has not yet seen fit to identify the adopted child exactly and precisely with the natural child. In time it may, as did the Roman law described, but that time is not yet.
Our immediate and pressing problem involves the claim that Mrs. Davis is entitled to preferential treatment under our inheritance tax statute. The problem, it will be noted and must be stressed, is not one of intestacy, or of inheritance, or of rights and duties as between adoptor and adoptee, however much light may be cast upon the status of the adopted child by a consideration of such statutes. The problem begins and remains one of taxation and it is well to observe that our point of departure in the interpretation of any taxing act is the consideration that a preference in or an exemption from taxation must be clearly defined and without ambiguity. Taxation, like rain, falls on all alike. True, there are, in any taxing act, certain exceptions, certain favored classes, who escape the yoke. But one claiming the unique and favored position must establish his right thereto beyond doubt or cavil. Our inheritance tax act favors the lineal descendants of a decedent. Is *298 Mrs. Davis a lineal descendant of George Smith, the man who adopted her mother?
We have given much thought to a related situation. Section 2, First (a) of the act, which we have here under examination, grants a favored position to, among others, 3 classes of children: (1) natural children, (2) adopted children, and (3) mutually-acknowledged children. In the case of In re Gay's Estate, 310 Mich 226, we considered the last-mentioned category, that of the mutually-acknowledged child. It was there conceded that one Ann Pratt Bottje, who had come to live with Mrs. Gay at the age of 15, stood in the mutually-acknowledged relationship of child to Mrs. Gay. It was argued, as in the case at bar, that Ann Pratt Bottje's children should, under the inheritance tax law, be classed as lineal descendants of Mrs. Gay. This Court rejected the claim. "We do not," we said (p 229), "enlarge the legal as well as generally-accepted meaning of `lineal descendant' to include the Bottje children as lineal descendants of Mrs. Gay."
That it would be an enlargement there can be no doubt. The enlargement would be equally great, and equally unjustified, both by generally accepted meaning and the language of the act, in the case before us. A "lineal descendant" is not an expression newly come to the law and of doubtful import. In the context now before us, involving not adoptor and adoptee, but the ancestral relationship, it has a fixed and settled meaning, describing blood relations in the direct line of descent. Mrs. Davis is not such. She is the natural child of an adopted child. We cannot, however laudable the motive is urged to be, by at least one party to the controversy, warp out of context words having a settled meaning. The section of the act under consideration employs such words as father, mother, child, children adopted, and lineal descendant. There can be no doubt that the *299 legislature is aware of the circumstance of adoption. When it treats of the situation of such children it uses words apt thereto, viz., adopted children, thus distinguishing them from other children. We cannot sweep away these distinctions. An adopted son may dwell in our hearts forever as a son of the blood. The law, moreover, may provide that in certain respects he shall be treated as if he were a son. But when we are faced with a statute recognizing that there are both natural children and adopted children, we are compelled to respect the legislative classification. Similarly, just as the beloved adopted child is not a son in fact, Mrs. Davis is not in fact a lineal descendant of George E. Smith. If the legislature should wish that she be taxed as if she were a lineal descendant it is within its competence so to do, but up to the present time such intent has not been made manifest. Able amicus curiae argues to us that:
"A sound policy requires that the consequences of an adoption should, for the adopting parents, be the same as the consequences of a natural birth and that if a couple has through the adoption process accepted the responsibilities of parents that couple should have the same rights and privileges as are enjoyed by others who became parents by the birth process."
The argument is compelling but it is addressed to the wrong forum. It lies within the province of the legislature, not of this Court, to assimilate the position of the adopted child completely to that of the natural child, should sound social policy so require.
We have foreborne a discussion of cases from other jurisdictions. Their study has revealed statutory dissimilarities to the extent that their worth as precedent is doubtful. Nor is it necessary to comment upon Michigan authority, other than discussed *300 above, save to observe that the case of Fisher v. Gardnier, 183 Mich 660 (affirmation by equally divided court), urged upon us by appellants, concerned only the right of an adopted child to inherit from its adopting parents and the language thereof must be read in the light of the problem then before us.
Judgment affirmed. No costs, a public question being involved.
CARR, C.J., and BUTZEL, SHARPE, REID, and KELLY, JJ., concurred with SMITH, J.
DETHMERS, J., concurred in the result.
BOYLES, J., did not sit.
NOTES
[*] "Sec. 2. First (a) Where the person or persons entitled to any beneficial interest in such property shall be the grandfather, grandmother, father, mother, husband, wife, child, brother, sister, wife or widow of a son, or the husband of a daughter, or to or for the use of any child or children adopted as such in conformity with the laws of this State or any other State or country, of the decedent grantor, donor or vendor, or for the use of any persons to whom such decedent grantor, donor or vendor stood in the mutually acknowledged relation of a parent: Provided, however, That such relationship began at or before the child's seventeenth birthday and continued until the death of such decedent grantor, donor or vendor, or to or for the use of any lineal descendant of such decedent grantor, donor or vendor, such transfer of property of the clear market value of $5,000 shall be exempt from all taxation under this act;

"(b) Where the transfer is to husband or wife such a transfer of property of the clear market value of $30,000 shall be exempt from all taxation under this act. In event no property is transferred to any minor child or children, the widow shall be entitled to an additional exemption of $5,000 for each such child to whom no property is transferred.
"Second. In case the clear market value of the property transferred to each individual of the persons included in the classes specified in paragraph 1 hereof exceeds the exemptions specified in paragraph 1, such exemptions shall first be deducted therefrom; when the clear market value of such property shall not exceed $50,000 before deducting such exemptions the transfer of such property in excess of the exemptions herein provided and up to said $50,000 shall be taxed under this act at the rate of 2 per centum of the clear market value thereof. When the clear market value of such property exceeds $50,000 the excess over exemptions of the first $50,000 shall be taxed as aforesaid and the transfer of that portion of such property in excess of said $50,000 and up to $250,000 shall be taxed under this act at the rate of 4 per centum of the clear market value thereof; the transfer of that portion of such property in excess of said $250,000 and up to $500,000 shall be taxed under this act at the rate of 5 per centum of the clear market value thereof; the transfer of that portion of such property in excess of said $500,000 and up to $750,000 shall be taxed under this act at the rate of 6 per centum of the clear market value thereof; the transfer of that portion of such property in excess of said $750,000 shall be taxed under this act at the rate of 8 per centum of the clear market value thereof: Provided, That portion of the property so transferred so [to?] each individual of the persons included in the classes specified in paragraph 1 hereof, which consists of real estate, shall be taxable at 3/4 the rates specified in this act. In determining the tax payable under this act, the property subject to tax shall be deemed to consist of real and personal property in the proportions that the clear market value of such real property and such personal property, respectively, bear to the clear market value of the total property so transferred.
"The exemptions of section 1 and paragraph 1 of section 2 of this act shall apply and be granted to each beneficiary's interest therein, and not to the entire estate of a decedent. No deductions or exemptions from such tax shall be made for any allowance granted by the order of any court for the maintenance and support of the widow or family of a decedent pending the administration of the estate when there is income from such estate accruing after death, which is available to pay such allowance, or for a longer period than 1 year, or for a greater amount than is actually used and expended for the maintenance and support of such widow or family for 1 year.
"Third (a) Except as hereinafter provided, in cases other than those specified in paragraph 2 hereof, the tax shall be at the rate of 10 per centum upon the clear market value of the property transferred not exceeding $50,000;
"(b) Upon all in excess of $50,000 and up to $500,000, 12 per centum;
"(c) Upon all in excess of $500,000, 15 per centum." (CL 1948, § 205.202 [Stat Ann § 7.562].)
[**] This act was held invalid in People v. Congdon, 77 Mich 351, was repealed and superseded by various acts, finally by the probate code. See CL 1948 and CLS 1954, § 710.1 et seq. (Stat Ann 1943 Rev and Stat Ann 1953 Cum Supp § 27.3178 [641] et seq.).
[] Amending CL 1948, § 710.9 (Stat Ann 1955 Cum Supp § 27.3178 [549]).  REPORTER.