*In re* D'AMICO ESTATE

LENTINI v DEPARTMENT OF TREASURY

Docket No. 84290. Argued December 5, 1989 (Calendar No. 4). Decided
September 4, 1990.

Joseph Lentini and Samuel D. D'Amico as personal representa-
tives of the estate of Rose D'Amico, deceased, petitioned the
Kent County Probate Court, seeking a redetermination of the
amount of inheritance tax sought by the Department of Trea-
sury in 1986 on the basis of the transfer of the right to receive
future installments of the decedent's winnings in the Michigan
lottery. The court, Donald J. DeYoung, J., ruled that state
lottery proceeds, won before the 1988 repeal of the statutory
provision exempting state lottery proceeds from the imposition
of tax, were not subject to inheritance tax. The Court of
Appeals, WEAVER, P.J., and WAHLS, J. (M. J. SHAMO, J., dissent-
ing), reversed, finding that the exemption applied to a direct
tax on property and not to a tax on the privilege of transfer-
ring or receiving property by inheritance (Docket No. 99232).
The petitioners appeal.

In an opinion by Justice LEVIN, joined by Justices BRICKLEY,
CAVANAGH, and ARCHER, the Supreme Court *held:*

State lottery prize proceeds, including the right to transfer
and receive an inheritance of such proceeds, are exempt from
inheritance tax.

1. Section 34 of the Lottery Act provides that no state tax of
any kind whatsoever is to be imposed on the proceeds of a state
lottery prize. The inheritance tax is a tax, regardless of
whether it is deemed an excise, indirect, transfer, or privilege
tax, where it is measured by the present value at the time of
death of the unpaid proceeds of a lottery prize.

2. A plausible and defensible construction placed upon a
statute by the agency legislatively chosen to administer it is
entitled to great weight. For over a decade, the Department of
Treasury construed § 34 of the Lottery Act as exempting state

REFERENCES

Am Jur 2d, Inheritance, Estate, and Gift Taxes § 31.

See the Index to Annotations under Inheritance and Estate Taxes;
Lotteries.

lottery prize proceeds from inheritance taxation. Persons who bought lottery tickets during that time should be accorded the benefit of that construction. The department should be held to be bound by its first, contemporaneous construction that the inheritance tax is a tax within the meaning of § 34 of the Lottery Act, at least with regard to the estates of persons who purchased tickets before September 14, 1983.

Reversed.

Justice GRIFFIN, joined by Chief Justice RILEY and Justice BOYLE, dissenting, stated that the transfer at death of the decedent's entitlement to future lottery payments should be subject to the state inheritance tax. The petitioners failed to sustain their burden of establishing an exemption.

171 Mich App 296; 429 NW2d 659 (1988) reversed.

TAXATION — INHERITANCE TAX — LOTTERY PROCEEDS.

State lottery prize proceeds, including the right to transfer and receive an inheritance of such proceeds, are exempt from inheritance tax, at least with regard to the estates of persons who purchased lottery tickets before September 14, 1983 (MCL 432.34; MSA 18.969[34]).

*Rhoades, McKee, Boer, Goodrich & Titta* (by *Peter A. Titta*) for the petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Russell E. Prins,* Assistant Attorneys General, for the respondent.

LEVIN, J. The question presented is whether annual installments of a Michigan state lottery prize, unpaid at the winner's death, are exempt from the inheritance tax[1] under a provision of the

___

[1] Section 1 provides:

A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of $100.00 or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations, not exempt by law in this state from taxation on real or personal property . . . . [MCL 205.201 *et seq.*; MSA 7.561 *et seq.,* 1899 PA 188, as amended. Emphasis added.]

Lottery Act[2] providing that no state or local tax
"of any kind whatsoever shall be imposed upon
the proceeds from a prize" awarded by the state
lottery. We hold that state lottery prize proceeds,
including the right to transfer and receive an
inheritance of such proceeds, were so exempt.

I

Rose D'Amico won a state lottery prize entitling
her to $1,000,000 payable in twenty annual install-
ments of $50,000. Fourteen installments were un-
paid when she died in March, 1981.

The inheritance tax examiner, in accordance
with the Department of Treasury's eleven-year
practice of not seeking to tax state lottery pro-
ceeds, did not include the lottery proceeds in the
December, 1981, calculation of the inheritance tax.
The tax was redetermined in April, 1986, after a
September, 1983, Department of Treasury decision
to seek to collect inheritance tax on the transfer of
the right to receive future installments of a dece-
dent's lottery winnings. The additional tax sought
to be imposed is $13,527.70.

The probate court ruled that state lottery pro-
ceeds were not, before the 1988 repeal of the
statutory provision exempting state lottery pro-
ceeds from the imposition of tax, subject to inheri-
tance tax.[3] 1988 PA 516. The Court of Appeals

---

[2] Section 34 of the Lottery Act (1972 PA 239, MCL 432.1 *et seq.*;
MSA 18.969[1] *et seq.*) provided:

> No state or local taxes of any kind whatsoever shall be
> imposed upon the proceeds from a prize awarded by the state
> lottery. [MCL 432.34; MSA 18.969(34).]

[3] The probate judge said: "This court, however, feels that the clear
meaning of the State Lottery Statute should be carried out and that
states quite clearly that there should be no tax assessed against
lottery winnings."

reversed, stating that the exemption was for a "direct" tax on property and did not apply to a tax on the privilege of transferring or receiving property by inheritance.[4]

II

The United States Supreme Court held in 1900 that legislation exempting securities issued by the United States government from taxation did not exempt the securities from federal estate or state inheritance taxation.[5] State court cases generally adopt the analysis employed by the United States Supreme Court.[6]

---

[4] The Court of Appeals said:

We find no conflict between those statutes clearly indicating that state or local taxes shall not be imposed on lottery proceeds and those statutes clearly indicating that an inheritance tax shall be imposed upon the transfer of any property. Because the Michigan inheritance tax is not a tax on the property itself, but is instead a tax on the *transfer* of property, measured by the value of the property so transferred, the inheritance tax may be validly imposed upon the transfer of such property and not violate the provision that lottery proceeds be exempt from taxation. [*In re Fish Estate,* 219 Mich 369, 373; 189 NW 177 (1922)]; MCL 205.201; MSA 7.561.

. . . Therefore, we hold that the right to receive such winnings, as intangible personal property payable to decedent's estate, became a taxable privilege subject to the state's inclusion as a measure for imposing inheritance tax upon transfer from decedent to her beneficiaries. [*In re D'Amico Estate,* 171 Mich App 296, 302-303; 429 NW2d 659 (1988). Emphasis in original.]

[5] See *Plummer v Coler,* 178 US 115, 138; 20 S Ct 829; 44 L Ed 998 (1900), *Murdock v Ward,* 178 US 139; 20 S Ct 775; 44 L Ed 1009 (1900), and *United States Trust Co v Helvering,* 307 US 57; 59 S Ct 692; 83 L Ed 1104 (1939).

[6] See anno: *Statutory provision that specified fund or property shall be "exempt from taxation," "exempt from any tax," or the like, as exempting such property from estate or succession taxes,* 47 ALR2d 999, § 3, p 1003.

This Court observed in *In re Fish Estate,* n 4 *supra,* p 373, relied on in the dissenting opinion:

Judicial opinions so holding draw a distinction, adopted by the Court of Appeals and in the dissenting opinion, between a "direct" and an "indirect" tax, and distinguish between a direct tax on property or income and a tax on the "privilege" of transferring or receiving property, and sometimes explain their results by characterizing an estate or inheritance tax as an excise tax.

The courts so holding also invoke, as did the Court of Appeals and the dissent, rules of construction disfavoring exemption from taxation.[7]

The weight of authority, however, is not always determined by the use of an adding machine. We not infrequently follow the minority in number of the holdings, and should do so where such holdings appeal to our judgment and convince us that the true rule has been arrived at by the minority in number.

[7] The dissent cites *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660, 669-670; 242 NW2d 749 (1976), *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 753; 298 NW2d 422 (1980), *Detroit v Detroit Commercial College,* 322 Mich 142, 148; 33 NW2d 737 (1948), *St Joseph's Church v Detroit,* 189 Mich 408; 155 NW 588 (1915), *Edison v Revenue Dep't,* 362 Mich 158, 162; 106 NW2d 802 (1961), *Romeo Homes, Inc v Revenue Comm'r,* 361 Mich 128, 137; 105 NW2d 186 (1960), *In re Smith Estate,* 343 Mich 291; 72 NW2d 287 (1955), and *Town & Country Dodge, Inc v Treasury Dep't,* 420 Mich 226, 243; 362 NW2d 618 (1984).

The constructional issue presented in the instant case, whether the inheritance tax is a "tax" "of *any kind* whatsoever," is somewhat different from the constructional issues presented in the cited cases. In each of the cited cases there was clearly a debatable question concerning the meaning of the words chosen to express the exemption from taxation. Acknowledging that there is rarely if ever such clarity in expression as might justify the use of the "plain meaning" shibboleth, the words "taxes of any kind whatsoever" are at least, in terms, unambiguous.

In *Michigan Baptist Homes,* the question was whether a licensed home for the aged was within an exemption from ad valorem property taxation for charitable or benevolent purposes.

In *Ladies Literary Club,* the question was whether the club was exempt from ad valorem property taxation as an educational institution.

In *Detroit Commercial College,* the question was whether the Detroit Commercial College was an educational institution within an exemption from ad valorem property taxation.

In *St Joseph's Church,* the question was whether vacant land adjoining a parsonage was "occupied as such" within the meaning of an exemption from ad valorem property taxation.

The most telling rule of construction, however, is often a court's teleological assessment of the consequences of one construction as opposed to another, as appears from the seminal decision of the United States Supreme Court in *Plummer v Coler,* 178 US 115, 138; 20 S Ct 829; 44 L Ed 998 (1900), where an underlying policy is stated:

It is often impracticable to secure from living persons their fair share of contribution to maintain the administration of the State, and such [inheritance tax] laws seem intended to enable to secure payment from the estate of the citizen when his final account is settled with the State. *Nor can it be readily supposed that such obligations can be evaded or defeated by the particular form in which the property of the decedent was invested.* [Emphasis added.]

Were the United States Supreme Court to have held that United States government securities were exempt from estate and inheritance taxation, persons whose wealth is in liquid form—cash, checking, or savings accounts, or marketable securities—could, in anticipation of death, have invested the bulk of their fortunes in tax-exempt United States government securities and thereby avoided all estate and inheritance taxation of wealth in that form. The Court undoubtedly cor-

In *Edison,* the question was whether the construction of a highway was "industrial processing" within the meaning of a use tax exemption.

In *Romeo Homes, Inc,* the question was whether prefabricated homes were within a use tax exemption for materials affixed and made a structural part of real estate.

In *Smith Estate,* the question was whether the natural child of the *adopted* daughter of the decedent was a "lineal decedent" within the meaning of the inheritance tax law.

In *Town & Country Dodge,* the question was whether monies returned to an automobile dealer as a portion of the finance charge was interest income within the meaning of the Single Business Tax Act.

rectly assessed the matter in concluding that the Congress did not intend such a result when it exempted United States government securities from taxation.

The policy concern identified in *Plummer* does not obtain where lottery proceeds are involved. While a lottery winner expends money in purchasing lottery tickets, there is no "investment" or transfer of wealth, in the sense referred to in *Plummer*, in purchasing a lottery ticket, and no need, by judicial construction, to guard against avoidance, beyond the policy of the statute, of estate and inheritance tax.

I acknowledge that *United States Trust Co v Helvering*, 307 US 57; 59 S Ct 692; 83 L Ed 1104 (1939), cannot be explained on the policy basis suggested. There the exemption was of life insurance proceeds, apparently payable ex gratia, by the United States to veterans of World War I. The Court observed that the rule distinguishing between a direct and indirect tax, and the excise distinction, had been well established, before enactment of the legislation providing the life insurance benefit, since 1900 when *Plummer* was decided.[8]

### III

This Court has not heretofore considered the question dealt with in *Plummer.* There is no decision of this Court holding that a legislative exemption from taxation applies only to direct taxes, or that an indirect or excise tax on the right or privilege of transferring or receiving property is

[8] Moreover, a Department of Treasury regulation restated the *Plummer* rationale. Treasury regulations have been regarded, for purposes of federal taxation, as having the force of law. See *Hartley v Comm'r of Internal Revenue*, 295 US 216, 220; 55 S Ct 756; 79 L Ed 1399 (1935).

not included within an exemption from taxation.[9] There not having been a ruling by this Court establishing the law in Michigan, the department's eleven-year practice of exempting lottery proceeds from inheritance tax on the basis of a ruling by the Attorney General takes on, in our opinion, decisive significance.

A

The letter, dated October 5, 1977, advising of the first, contemporaneous construction of the lottery tax exemption from taxation, stated:

The Attorney General's Department, Revenue and Collections Division, Mr. Richard R. Roesch Assistant in Charge, has ruled that lottery winnings are not subject to any Michigan tax *which,*

[9] The dissent states that "it cannot be said with a certainty 'beyond doubt or cavil' that the Legislature also intended to preclude any tax *'upon the transfer'* at death of entitlement to a lottery prize. See *In re Fish Estate, supra.*" *Post,* pp 570-571. *In re Fish Estate* does not, however, construe the words "upon the transfer of any property" in the inheritance tax statute. See n 1 for text of the statute.

The question presented in *In re Fish Estate* was whether the amount paid to the federal government as an estate tax is deductible from the value of the decedent's property at the time of decedent's death in computing state inheritance tax. The only exemption referred to in *In re Fish Estate* is a $50,000 exemption from the federal estate tax.

The statement in *In re Fish Estate, supra,* pp 373-374, that the inheritance tax is not "a tax upon property," and that the "right of transmission of property" and "to receive property" upon death "are not inherent rights, but are privileges which may be taxed by a privilege tax," may be black letter law. D'Amico's estate does not challenge the power of the state to impose a tax on the value of property or a privilege tax on the transfer or receipt of property. It claims rather that the Legislature, when it enacted that no tax "of any kind whatsoever" shall be imposed upon the proceeds of a state lottery prize, expressly chose not to exercise that power and not to impose the inheritance tax in respect to such proceeds.

The statements in *In re Fish Estate* do not concern or address the question presented, whether the language of the Lottery Act, barring the imposition of "any tax whatsoever," bars imposition of the inheritance tax in the instant case. No decision of this Court addresses or provides insight in respect to the resolution of that question.

*of course, includes inheritance tax.* [Emphasis added.][10]

In 1983, the department announced that it would no longer adhere to that ruling.[11]

**B**

This Court has held that "the construction placed upon a statute by the agency legislatively chosen to administer it is entitled to great weight." *Davis v River Rouge Bd of Ed,* 406 Mich 486, 490; 280 NW2d 453 (1979).

A leading treatise on statutory construction states:

> Interpretations and application of regulations by officers, administrative agencies, departmental heads and others officially charged with the duty of administering and enforcing a statute have great weight in determining the operation of a statute. *The greatest weight attaches to an admin-*

[10] The letter, addressed to the attorney for a decedent's estate, is on the stationery of Stanley D. Steinborn, Deputy Attorney General, and was signed by E. Boomie Mikrut, Assistant Attorney General, with a copy to Francis Gould, Inheritance Tax Division.

[11] On September 14, 1983, the department issued the following communication from Gould (see n 10) to "All Inheritance Tax Auditors":

> A new development has occurred in the transferring of *lottery receivables from a decedent to another. Previously we had indicated we would consider all lottery winnings as exempt from taxation.* Lottery winnings are still exempt in some cases, however, an individual who has received a lottery prize and has a receivable for the payment of funds over a number of years, has an asset. On death, the transfer of property is not the transfer of a lottery winning but a transfer of an account receivable to a beneficiary. This will be taxable. We have had a court case in Macomb County upholding this position and our Attorney General has informed me that it is a proper position. *In the future, tax all transfers of accounts receivable from lottery winnings the same as any other transfer of property.* [Emphasis added.]

*istrative interpretation in favor of parties who have reasonably relied upon it.* [2A Sands, Sutherland Statutory Construction (4th ed), § 49.05, p 362. Emphasis added.]

One of the soundest reasons sustaining contemporaneous interpretations of long standing is the fact that *the public has relied on the interpretation.* . . . While the principle here is not strictly that of estoppel running against the government there is some analogy to that principle when the interpretation has been made by a government agency or officer. [*Id.,* § 49.07, p 394. Emphasis added.]

The United States Court of Appeals for the Third Circuit said:

Deference to the Attorney General's interpretation of the [Kentucky Consumer Protection] Act is particularly appropriate here because the *interpretation is adverse to his best interests* in this litigation. [*In re Glenn W Turner Enterprises Litigation,* 521 F2d 775, 779 (CA 3, 1975). Emphasis added.]

In holding that promissory notes were not debentures within the meaning of a statute that imposed a stamp tax on "all bonds debentures, or certificates of indebtedness issued by any corporation," the United States Supreme Court said:

*Against the Treasury's prior longstanding and consistent administrative interpretation its more recent ad hoc contention as to how the statute should be construed cannot stand.* [*United States v Leslie Salt Co,* 350 US 383, 396; 76 S Ct 416; 100 L Ed 441 (1956).[12] Emphasis added.]

[12] The court also noted that the department's original interpretation had express and implied congressional acquiescence and that it was in accord with the generally understood meaning of the term "debentures." *Leslie Salt Co, supra,* pp 396-397.

The United States Court of Appeals for the Second Circuit in *Jandorf's Estate v Comm'r of Internal Revenue,* 171 F2d 464 (CA 2, 1948), declined to apply the direct/excise/privilege/transfer tax distinction for, among other reasons, the department's longstanding policy of construing the statute at issue in that case[13] as granting an estate tax exemption for United States government bonds owned by nonresident aliens.[14] Both the instant case and *Jandorf's Estate* may be contrasted with *United States v Wells Fargo Bank,* 485 US 351, 353; 108 S Ct 1179; 99 L Ed 2d 368 (1988), a case cited by the department in support of the direct/excise/privilege/transfer tax distinction. The Court there noted that

> [f]or almost 50 years after the Act's passage, it was generally assumed that this [the provision of the Housing Act of 1937 exempting project notes from all taxation imposed by the United States] exempted the Notes from federal income tax, but not from federal estate tax.

The unbroken assumption regarding the construction of the exemption in *Wells Fargo Bank* was

---

[13] The statute at issue in that case (§ 4 of the Victory Liberty Loan Act of March 3, 1919, 40 Stat 1311) exempted United States government bonds owned by nonresident aliens from taxation at national, state, and local levels.

[14] In response to cases cited in support of drawing a distinction between a direct tax on property and an estate tax, the court said:

> Those cases support the proposition that a provision exempting United States bonds from taxation as to principal and interest, *without more,* relates exclusively to direct taxation of them as property. The cited cases would be persuasive, if Congress had not shown an intent to use the phrase "exempt . . . from all taxation" to include estate taxes by expressly excepting them in one section of the statute and not in the other, *and if the Treasury Department had not for 20 years construed the statute as granting exemption with respect to the estate tax. [Jandorf's Estate, supra,* p 467. First emphasis in original, second emphasis added.]

thus the opposite of that operating in *Jandorf's Estate* and in the instant case.

### C

For over a decade, the department construed § 34 of the Lottery Act as exempting state lottery prize proceeds from inheritance taxation. Persons who bought lottery tickets during the regime when the department and field examiners were administering the inheritance tax law as exempting lottery proceeds from inheritance tax should be accorded the benefit of the first, contemporaneous construction of the law:

> It has been held that an administrative agency having interpretive authority may reverse its interpretation of a statute, but that its new interpretation applies only prospectively. [Sands, *supra*, § 49.05, p 365.]

### D

A state lottery winner's right to a lottery prize is governed by principles of contract law.[15] In that context, it has been said:

> The practical interpretation of the contract by one party, evidenced by his words or acts, can be used against him on behalf of the other party, even though that other party had no knowledge of those words or acts when they occurred and did not concur in them. [3 Corbin, Contracts, § 558, p 256.]

### E

Persons who buy tax-exempt bonds may be more

---

[15] *Paulsen v State Lottery Bureau*, 167 Mich App 328, 334; 421 NW2d 678 (1988).

likely to consult lawyers and accountants familiar
with the esoteric distinction enunciated in *Plum-
mer* than purchasers of state lottery tickets, who
are not likely to become aware of a distinction
between direct and indirect taxation, and income,
privilege, transfer, and excise taxes:

> The words of the statute are to be taken in the
> sense in which they will be understood by that
> public in which they are to take effect. [*United
> States v Isham,* 84 US (17 Wall) 496, 504; 21 L Ed
> 728 (1873).]

It is unlikely that Rose D'Amico's heirs would
perceive a meaningful distinction between being
required to pay $13,754 as income tax,[16] from
which they are concededly exempt, and paying
$13,527.70 as inheritance tax. The proceeds of the
lottery prize that they receive and may retain free
of tax will have been reduced by $13,527.70
whether called an income, an excise, a privilege, a
transfer, or an inheritance tax.

IV

In sum, the Lottery Act provides that no state
tax "of *any kind whatsoever*" shall be imposed on
the proceeds of a state lottery prize. The inheri-
tance tax is, in terms, a tax, and it cannot seri-
ously be suggested that it is not a tax.[17] It is a tax
even if it is an excise tax, an indirect tax, a

---

[16] The additional inheritance tax sought to be imposed on the
D'Amico heirs is $13,527.70.

The present value, at the time of Rose D'Amico's death, of the right
to receive the fourteen unpaid installments was, as determined by the
department, $299,000. That amount multiplied by the state income
tax rate of 4.6 percent is $13,754.

[17] See *post,* p 568, n 3.

The Legislature did not, however, enact a law escheating all or
some part of a decedent's property, but, rather, an inheritance tax.

transfer tax, a privilege tax, and not simply, as the Legislature called it, an inheritance tax.

This tax is measured by the present value, at the time of death, of the unpaid "proceeds" of the lottery prize. The first, contemporaneous construction by the state that the inheritance tax is a tax within the meaning of § 34 of the Lottery Act was, for reasons earlier stated, an entirely plausible and defensible construction.

The Department of Treasury should be held to be bound by the first, contemporaneous construction by the state, at least with regard to the estates of persons who purchased lottery tickets before September 14, 1983, when the department advised inheritance tax field examiners of a "new development."[18]

We reverse the decision of the Court of Appeals.

Brickley, Cavanagh, and Archer, JJ., concurred with Levin, J.

Griffin, J. (*dissenting*). In this appeal the issue is whether the state inheritance tax is applicable to the transfer at death of the right to receive future installments of Michigan lottery winnings. We conclude that imposition of the tax is required by statute, and therefore we would affirm the decision of the Court of Appeals.

I

During her lifetime Rose D'Amico won the state lottery. As a result of her good fortune, she became entitled to receive $1 million, payable in twenty annual installments of $50,000 each. When she died on March 13, 1981, fourteen of the installments remained unpaid.

---

[18] See n 11.

A controversy concerning the last will and testament of Rose D'Amico was settled by agreement, and the residue of her estate, including her entitlement to the future lottery installments, was assigned to six named individuals by the Kent Probate Court. There remains, however, the question whether the inheritance tax is applicable to this transfer.

At first, the Michigan Department of Treasury computed the inheritance tax to be assessed without reference to the lottery winnings. Later, however, the department made a redetermination and applied the tax to the value at death of the right to receive the future installments. It was determined that the future installments, which aggregated $700,000, had a discounted value at death of $299,000.

Petitioners, on behalf of the estate, challenged the redetermination, claiming that the lottery winnings were exempt from the inheritance tax by virtue of § 34 of the Lottery Act which then provided:

> No state or local taxes of any kind whatsoever shall be imposed upon the proceeds from a prize awarded by the state lottery. [MCL 432.34; MSA 18.969(34).]

The probate judge agreed with petitioners and ruled that the tax did not apply. He stated, however, that "[t]his matter undoubtedly will be appealed . . . as this Court feels it should . . . ."

On appeal, a divided panel of the Court of Appeals reversed,[1] reasoning that the inheritance tax statute does not impose a tax upon the "pro-

---

[1] 171 Mich App 296, 302; 429 NW2d 659 (1988). The opinion was authored by Judge WEAVER, with the concurrence of Judge WAHLS. A dissent was registered by Judge M. JOHN SHAMO, Recorder's Court judge sitting by assignment.

ceeds," or the property itself, but rather it imposes a tax

> upon the *transfer* of any property, real or personal, of the value of $100.00 or over . . . to persons . . . not exempt by law in this state from taxation . . . (a) When the transfer is by will or by the intestate laws of this state from any person dying seized or possessed of the property while a resident of this state. [MCL 205.201(1)(a); MSA 7.561(1)(a). Emphasis added.]

The majority concluded that petitioners had failed to establish "clearly and unambiguously, beyond doubt or cavil" the claim of the estate to an exemption from the inheritance tax. 171 Mich App 296, 302; 429 NW2d 659 (1988). We granted leave to appeal. 432 Mich 920 (1989).

II

As a general rule, exemptions from taxation are not favored. *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660, 669-670; 242 NW2d 749 (1976); *Edison v Dep't of Revenue,* 362 Mich 158, 162; 106 NW2d 802 (1961); *Romeo Homes, Inc v Revenue Comm'r,* 361 Mich 128, 137; 105 NW2d 186 (1960). It is a well-settled principle that a tax exemption must be clearly and unequivocally established by the party seeking the favored position. *In re Smith Estate,* 343 Mich 291; 72 NW2d 287 (1955); see also *Town & Country Dodge, Inc v Treasury Dep't,* 420 Mich 226, 243; 362 NW2d 618 (1984). Thus, statutory tax exemptions are to be strictly construed against the party claiming the exemption. *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 753; 298 NW2d 422 (1980); *Town & Country Dodge, Inc v Dep't of Treasury, supra* at 242-243. See also 3A Sands,

Sutherland Statutory Construction (4th ed), § 66.09, pp 327-328.

While interpreting a provision of the inheritance tax act, this Court stated:

> [I]t is well to observe that our point of departure in the interpretation of any taxing act is the consideration that a preference in or an exemption from taxation must be clearly defined and without ambiguity. Taxation, like rain, falls on all alike. True, there are, in any taxing act, certain exceptions, certain favored classes, who escape the yoke. But one claiming the unique and favored position must establish his right thereto beyond doubt or cavil. [*In re Smith Estate, supra* at 297.]

Therefore, in the present case, petitioners face a heavy burden if they are to establish that the transfer in question is exempt from the inheritance tax. An exemption will not be inferred from language of a statute if the words admit of any other reasonable construction. *Detroit v Detroit Commercial College*, 322 Mich 142, 148; 33 NW2d 737 (1948).

III

As we see it, the case before us turns on whether the inheritance tax imposed amounts to a tax on the *proceeds* of a lottery prize or a tax on the *transfer* of the proceeds.

The statute upon which petitioners rely, by its terms, provides only for an exemption from *direct* taxation.[2] Again, § 34 of the Lottery Act provided:

---

[2] In general, taxes may be classified as either direct or indirect. A direct tax has been defined as "any tax which is imposed directly on property, according to its value, and . . . is generally spoken of as a property tax or ad valorem tax." 84 CJS, Taxation, § 3, p 37, n 49. An indirect tax is "a tax on some right or privilege or corporate franchise." *Id.*

No state or local taxes of any kind whatsoever shall be imposed upon the *proceeds* from a prize awarded by the state lottery. [Emphasis added.]

It has long been recognized in this state that the inheritance tax is not a direct tax on property.[3] As this Court stated many years ago:

[T]he State inheritance tax is [not] a tax upon property, although the value of property is used to fix the measure of the tax . . . . The right of transmission of property from the dead to the living, the right of the living to receive property from the dead, are not inherent rights, but are privileges which may be taxed by a privilege tax. [*In re Fish Estate,* 219 Mich 369, 373-374; 189 NW 177 (1922).]

See also *Union Trust Co v Wayne Probate Judge,* 125 Mich 487, 493; 84 NW 1101 (1901) (the inheritance tax act "as a whole, indicates its character to be a succession or privilege tax, and not a tax upon property").

The distinction recognized by this Court between

[3] One court has gone so far as to advance the theory that an inheritance tax is not really a tax at all:

The right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant. Students of law agree that the State has the right to declare an escheat of *all* the property of a decedent, and therefore, as the price of allowing a legatee, devisee or heir to inherit, it may appropriate to itself any portion of the property which it chooses to exact. Whether this appropriation be designated an inheritance tax, an estate tax, a succession tax, a death duty, or otherwise howsoever, it is not, in its essence, a tax on the decedent's property or any component part of it, or on the transaction of transferring it . . . but an excise on the privilege of inheritance. It is really not a tax at all in the ordinary meaning of the word, but rather a distributive share of the estate which the State retains for itself. [*In re Tack Estate,* 325 Pa 545, 548; 191 A 155 (1937). Emphasis in original.]

a direct tax on property and a tax on the privilege of transferring property at death accords with the rule in a majority of jurisdictions. See anno: *Statutory provision that specified fund or property shall be "exempt from taxation," "exempt from any tax," or the like, as exempting such property from estate or succession taxes,* 47 ALR2d 999, § 3, p 1003.[4] Moreover, in the absence of statutory language which specifically provides an exemption from the inheritance tax, most jurisdictions have held that an exemption will not be implied. *Id.*

The United States Supreme Court has repeatedly ruled that an estate or inheritance tax is not a direct tax upon property. In *Plummer v Coler,* 178 US 115, 134-135; 20 S Ct 829; 44 L Ed 998 (1900), the Court declared that a legacy of United States bonds was not exempt from a state's inheritance tax even though Congress had declared by statute that United States bonds were to be "exempt from taxation *in any form* by or under state . . . authority . . . ." (Emphasis added.) The Court reasoned that an inheritance tax is not a tax upon the bonds themselves, but instead is a tax upon the right to transfer or receive the bonds at death.

In *United States Trust Co v Helvering,* 307 US 57, 58; 59 S Ct 692; 83 L Ed 1104 (1939), the Supreme Court held that the proceeds of war-risk insurance were subject to the federal estate tax despite a statutory provision that such proceeds " 'shall be exempt from all taxation.' " The Court stated:

---

[4] In *In re Carver Estate,* 4 Misc 592; 25 NYS 991 (1893), the court considered whether United States bonds, which are exempt from state taxation by federal statute, are subject to the New York inheritance tax. The court reasoned that the resolution of the issue depended entirely upon whether the inheritance tax was imposed on the tangible substance or corpus of the property itself, or upon the intangible right to acquire and hold such property by succession or devolution. The court adopted the latter view and allowed the tax.

An estate tax is not levied upon the property of which an estate is composed. It is an excise imposed upon the transfer of or shifting in relationships to property at death. . . . [T]he taxing power was . . . exercised upon "the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another." [307 US 60.]

More recently, in *United States v Wells Fargo Bank,* 485 US 351; 108 S Ct 1179; 99 L Ed 2d 368 (1988), the Supreme Court held that obligations (project notes) of state and local public housing agencies were not exempt from federal estate taxes despite an enactment by Congress which declared that such obligations "shall be exempt from all taxation now or hereafter imposed by the United States . . . ." 42 USC 1437i(b). The Court observed:

Well before the Housing Act was passed, an exemption of property from all taxation had an understood meaning: the property was exempt from *direct* taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed. Underlying this doctrine is the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself. The former has historically been permitted even where the latter has been constitutionally or statutorily forbidden. [485 US 355. Emphasis in original, citation omitted.]

Although, the wording of § 34 makes clear that the Legislature intended to preclude any tax whatsoever "upon the proceeds" of a lottery prize, it cannot be said with a certainty "beyond doubt or cavil" that the Legislature also intended to preclude any tax *"upon the transfer"* at death of

entitlement to a lottery prize. See *In re Fish Estate, supra.* "[I]n all cases of doubt as to the legislative intention . . . the presumption is in favor of the taxing power, and the burden is on the claimant to establish clearly his right to exemption." *St Joseph's Church v Detroit,* 189 Mich 408, 414; 155 NW 588 (1915). In the present case, petitioners fail to cite any legislative history to support their assertion that the Legislature intended to preclude a tax upon the transfer at death of a lottery prize. The rule to be applied under such circumstances was summarized by Justice Cooley in these words:

> "An intention on the part of the legislature to grant an exemption from the taxing power of the state will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a special privilege or exemption is claimed under a statute . . . it is to be construed strictly against the [claimant] and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt." [*Ladies Literary Club v Grand Rapids, supra* at 754 (quoting 2 Cooley, Taxation [4th ed], § 672, pp 1403-1404).]

IV

Because petitioners have not sustained their burden of establishing an exemption, we would hold that the transfer at death of decedent's entitlement to future lottery payments is subject to

the state inheritance tax. Accordingly, we would affirm the decision of the Court of Appeals.

RILEY, C.J., and BOYLE, J., concurred with GRIFFIN, J.